LAVELLE *v.* OWENS-CORNING FIBERGLAS CORPORATION ET AL.

(No. 066351 — Decided January 12, 1987.)

Court of Common Pleas of Cuyahoga County.

Robert E. Sweeney, Michael Cassidy and *Michael V. Kelley,* for plaintiff.

*Davis & Young Co., L.P.A., Martin Murphy* and *C. Richard McDonald,* for defendants Owens-Corning Fiberglas Corp. et al.

*Hesser, Armstrong, Toomey & Disantis* and *Richard J. Disantis,* for Raymark Industries, Inc.

*Ulmer, Berne, Laronge, Glickman & Curtis* and *Robert P. Rutter,* for Nicolet, Inc.

JAMES J. McMONAGLE, J. The narrow issue presented in this asbestos exposure, products liability case arises from the defendants' request for an *in limine* order prohibiting the asbestosis-afflicted plaintiff from adducing at trial any evidence regarding cancer, any causal relationship between asbestos and cancer, or any increased risk or fear of developing cancer.

Nowhere is the symbiotic relationship between law and medicine more evident than in asbestos litigation generally and the particular issue raised herein. The insidious, progressive nature of asbestos-related diseases as discovered by the medical community forced the legal community to re-think its traditional approach as to when the statute of limitations commences. The lengthy gestation period of these diseases, as revealed in the medical literature, now brings into question the long-standing legal theories that have held that there can be only one recovery for all injuries — past, present and future. In order to insure scientific validity, medical research deals with groups, cohort studies, statistics and mathematics. Lawsuits, however, deal with an individual claimant, his or her specific medical condition and his or her own medical future. This

conflict in methodologies also complicates the law-medicine braid.

The inhalation of asbestos fibers causes many diseases, the most common being asbestosis,[1] which is generally referred to as a scarring of the lung.[2] Asbestos exposure can also produce other non-cancerous diseases in both the pleural (chest) cavity and the peritoneal (stomach) cavity. Most common of these are pleural plaques (hard white collagenous lesions on the lung or diaphragm), pleural fibrosis (a thickening of the outer membrane covering the lung), pleural effusions (inflammation on the lung), and pleural pseudotumors (lesions or masses appearing on a radiograph or CAT scan of the chest but disappearing upon surgery).

With the exception of malignant mesothelioma (a diffuse tumor arising from the mesothelial cells, *i.e.*, those cells on the surface lining of pleura, peritoneum and pericardium),[3] the causal relationship between asbestos exposure and other types of cancers, especially lung cancer, is not as clear. Even though early medical studies linked asbestos exposure and lung cancer,[4] there is no uniformly accepted medical consensus that the progressive nature of asbestosis always matures into lung cancer.

However, one expert on the subject of occupational carcinogenesis has written:

"Of one million current and former American asbestos workers that still survive, fully 300,000 can be projected to die of cancer. Indeed, 1 in 5 of these men can be expected to develop cancer of the lung; 1 in 10, cancer of the gastro-intestinal tract; and another 1 in 20 of pleural mesothelioma, an always fatal tumor of the pleura or peritoneum." Wagoner, Occupational Carcinogenesis: The Two Hundred Years Since Percival Potts (1976), 27 Annals, N.Y. Acad. Science 1-2.

At least since 1965, when the study by Dr. I. J. Selikoff was published, there have been ongoing scientific inquiries into the effects of prolonged asbestos exposure on the health of workers. The impact on the legal system was not immediately felt. Because there has been recent expansion of strict liability in tort under Section 402A of the Restatement of the Law 2d, Torts (1965), and because the latency period for asbestos-related diseases is twenty years on the average, an astounding number of lawsuits, along with the widespread movement to compensate injured workers, has just surfaced in the last five years.

---

[1] "The unpalatable facts are that in the twenties and thirties the hazards of working with asbestos were recognized; that the United States Public Health Service documented the significant risk in asbestos textile factories in 1938; that the Fleischer-Drinker Report was published in 1945; that in 1961 Dr. Irving Selikoff and his colleagues confirmed the deadly relationship between insulation work and asbestosis." *Borel* v. *Fibreboard Paper Prods. Corp.* (C.A.5, 1973), 493 F. 2d 1076, 1106, certiorari denied (1974), 419 U.S. 869.

[2] A medically correct definition is that asbestosis is a "diffuse fibrosis of the pulmonary parenchyma caused by asbestos exposure." Churg, Non-Neoplastic Asbestos Induced Disease (June 1986, No. 6), Mt. Sinai J. Med. 53.

[3] See Suzuki, Pathology of Human Malignant Mesothelioma (Sept. 1980, No. 3), 8 Seminars in Oncology; Wagner, Sleggs & Marchand, Diffuse Pleural Mesothelioma (1960), 17 Brit. J. Ind. Med. 260-271; Newhouse, Epidemiology of Asbestos-Related Tumors (Sept. 1981, No. 3), 8 Seminars in Oncology.

[4] Lynch & Smith, Pulmonary asbestosis: Carcinoma of lung in asbestos-silicosis, (1935), 24 Am. J. Cancer 56-64.

Gloyne, Two cases of squamous carcinoma of the lung occurring in asbestosis (1935), 17 Tubercle 5-10.

## Increased Risk of Cancer

In Greek mythology, Tantalus was a king and a son of Zeus, whose punishment in the lower world was eternal hunger and thirst. He was doomed to stand beneath branches laden with fruit which he could never reach. As with this legendary king, it is tempting and tantalizing for this court to open up the sphere of recovery and the scope of damages in an asbestos case. However, this court must not lose sight of the burden of proof confronting a plaintiff, of the elements of the cause of action which must be satisfied, and of the purpose of compensation as distinguished from punishment.

The plaintiff, who is petitioning the court on this issue, is suffering from the disease of asbestosis, not cancer. Simply stated, to permit recovery for the increased risk of cancer would be to allow speculation:

"Not only must the injury complained of, and for which damages are sought, be the direct, proximate, and probable result of the wrong, and not a remote consequence, but the injury, and the damages resulting, must be shown with certainty, and not be left to speculation or conjecture, whether the action is in contract or tort; damages which are uncertain, speculative, or conjectural cannot be recovered." 30 Ohio Jurisprudence 3d (1981) 24, Damages, Section 14.

Moreover, evidence that pain, suffering, or a condition "might" or "may" result from the injury complained of is incompetent; the evidence must tend to show that reasonable certainty of such result exists. See *Cooper* v. *Sisters of Charity* (1971), 27 Ohio St. 2d 242, 249-252, 56 O.O. 2d 146, 150-151, 272 N.E. 2d 97, 102-104. Plaintiff, through his medical expert, must establish probabilities, not mere possibilities.

Cancer is a separate disease process from asbestosis. Evidence cannot be adduced that asbestosis will inevitably lead to cancer. The only nexus between the pathologies of these two diseases is that they can be caused by the same carcinogen — asbestos fibers.

A plaintiff can never prove causation of a disease which has not yet manifested itself. Exposure to asbestos fibers can cause asbestosis. Exposure to asbestos fibers can result in cancer. Asbestosis does not necessarily develop into cancer. Thus, there is a gap in the logical progression. To hold a defendant manufacturer responsible for the future occurrence of cancer would entail treating the manufacturer as an absolute insurer of its product. This is not only unfair in light of the flawed analysis above, but it is not a desirable philosophy.[5] Certainly, there is an interest in promoting the economic health of businesses which generate income and provide jobs.

Section 402A of the Restatement of the Law 2d, Torts, provides that an unavoidably unsafe product may nevertheless be marketed, but the seller or manufacturer is responsible for informing consumers or users of the risk of harm. Thus, manufacturers have been held to the knowledge and skill of an expert in products liability cases. Consequently, they must keep informed of scientific breakthroughs concerning their products. A manufacturer's duty to warn extends to the ultimate user, and any warnings must be designed to reach that user. It is the plaintiff's contention here that the scope of the manufacturers' duty to warn is dependent upon the range of possible adverse health effects posed by exposure to harmful products. It follows, then, that evidence of increased risk of cancer should be admissible to define the parameters of the defendants manufacturers' obligations to adequately test and to adequately warn. This is not a

---

[5] For a contrary view see, *e.g.*, Note, Increased Risk of Cancer as an Actionable Injury (1984), 18 Ga. L. Rev. 563.

persuasive argument. Every case should turn upon a duty as it relates to the individual plaintiff's position, *i.e.,* the individual plaintiff's injuries. If and when cancer manifests itself, a defendant manufacturer incurs a distinct duty to test and to warn.

A valid point was made by Judge Clark of the Fifth Circuit Court of Appeals in *Jackson* v. *Johns-Manville Sales Corp.* (C.A.5, 1984), 727 F. 2d 506. He reasoned that a plaintiff stricken with asbestosis has no stronger cause of action for cancer than one with *no* disease manifestation at all:

"Jackson does not claim that he has cancer. He has produced no evidence that asbestosis will inevitably lead to cancer. The proof adduced does not demonstrate any relation between the pathologies of asbestosis and cancer, except that the diseases can be precipitated by the same pathogen or carcinogen. Viewed from this perspective, Jackson's claim for asbestosis injuries adds nothing to his claim for cancer damages. Had he attempted to recover for cancer damages before he had manifested any disease at all, his evidentiary burden of establishing his entitlement to compensation for future cancer would be no different from that in the present posture of this case. It would not be carried by proof that he was exposed to asbestos fibers and that, statistically, he was at over 50% risk of contracting cancer." *Id.* at 517.

A more perplexing problem will arise in the future wherein a plaintiff, who has only been compensated for a non-cancerous asbestos disease, actually develops lung cancer which, by a process of medical reasoning, probably was present or developing in his body when he

was awarded his asbestosis damages. Other states have held that under that circumstance, a new cause of action springs from a lung cancer which results from the same exposure to asbestos as that which caused previously diagnosed asbestosis. See *Pierce* v. *Johns-Manville Sales Corp.* (1983), 296 Md. 656, 464 A. 2d 1020. Ohio has not yet considered claim splitting.

### Increased Fear of Cancer

A real distinction can be drawn between the possibility of recovery for increased risk of cancer and that for increased fear of cancer ("cancerphobia"). See Gale & Goyer, Recovery for Cancerphobia and Increased Risk of Cancer (1985), 15 Cum. L. Rev. 723; and Note, Increased Risk of Cancer as an Actionable Injury, *supra,* at fn. 5. Cancerphobia is a claimed present injury consisting of mental anxiety and distress over contracting cancer in the future,[6] as opposed to risk of cancer, which is a potential physical predisposition of developing cancer in the future.

Ohio courts have not specifically addressed the issue presented here but the general policy of this state has been to permit recovery for reasonable apprehension of a potential harm flowing from a present injury. *Ward Baking Co.* v. *Trizzino* (1928), 27 Ohio App. 475, 161 N.E. 557 (fear of the consequences of swallowing a needle contained in a cake which necessitated a twenty-four-day hospital stay during which X-rays followed the needle's travels through the plaintiff's body); *Heintz* v. *Caldwell* (1898), 16 Ohio C.C. 630, 9 Ohio C.D. 412 (fear of contracting hydrophobia and lockjaw after being actually bitten by a dog which may have been rabid); *Clark Restaurant* v. *Rau* (1931), 41 Ohio

---

[6] See Browne, Is asbestos or asbestosis the cause of the increased risk of lung cancer in asbestos workers? (1986), 43 Brit. J. Ind. Med. 145-149 ("asbestosis * * * prepares the soil for subsequent malignancy"). Selikoff, Churg & Hammond, Relation Between Exposure to Asbestos and Mesothelioma (1985), 272 New Eng. J. Med. 560, 562 (fifteen percent of asbestosis-affected patients later contract pleural mesothelioma and twelve percent contract peritoneal mesothelioma).

App. 23, 179 N.E. 196 (fear of consequences after swallowing two particles of glass contained in a piece of pie); *Wolfe* v. *Great A & P Tea Co.* (1944), 143 Ohio St. 643, 28 O.O. 520, 56 N.E. 2d 230 (mental suffering after eating worm-contaminated food). Thus, mental distress damages have been characterized as "a normal element of damages available in a personal injury action" in Ohio. *In re Moorenovich* (D. Me. 1986), 634 F. Supp. 634, 636, written by the Hon. David S. Porter, Senior District Judge, Southern District of Ohio, sitting by designation.

The traditional rule has been that recovery may be had for emotional injuries when there is a contemporaneous physical impact,[7] albeit slight. During his various terms of employment, whether as an insulator, pipefitter, or factory worker, the asbestosis-afflicted plaintiff has been exposed to various sources of asbestos in the ambient air. Therefore, he can prove a physical contact with the fibers, which initiated his physical injuries.

Modern tort law now recognizes a separate cause of action for serious emotional distress without a contemporaneous physical injury. *Schultz* v. *Barberton Glass Co.* (1983), 4 Ohio St. 3d 131, 4 OBR 376, 447 N.E. 2d 109; *Paugh* v. *Hanks* (1983), 6 Ohio St. 3d 72, 6 OBR 114, 451 N.E. 2d 759. Examples of serious emotional distress are traumatically induced neurosis, psychosis, chronic depression and phobia. *Paugh* v. *Hanks, supra,* at 78, 6 OBR at 119, 451 N.E. 2d at 765. Cancerphobia falls within this definition.

Increased fear of cancer, to be compensable, means that an asbestosis-afflicted plaintiff is aware that he in fact possesses an increased statistical likelihood of developing cancer, and that from this knowledge springs a reasonable apprehension which manifests itself in mental distress. Reasonable in this context is not equivalent to probability or certainty, but is for a fact-finder to determine. See *Wetherill* v. *Univ. of Chicago* (N.D. Ill. 1983), 565 F. Supp. 1553, 1559.

Therefore, under any of the theories discussed herein, whether it be serious emotional distress or consequential anxiety and distress, the plaintiff will be permitted to introduce evidence regarding his increased fear of cancer.

Neither Evid. R. 402 nor 403 dictates a contrary result.

Defendants' motion *in limine* regarding increased fear of cancer is denied.

Defendants' motion *in limine* regarding increased risk of cancer is granted.

*Judgment accordingly.*

---

[7] The impact rule first emerged in the English case of *Victorian Railways Commrs.* v. *Coultas* (1888), 13 App. Cas. 222. It was quickly adopted in this country. *Mitchell* v. *Rochester Ry. Co.* (1896), 151 N.Y. 107, 45 N.E. 354; *Miller* v. *Baltimore & Ohio S.W. RR. Co.* (1908), 78 Ohio St. 309, 85 N.E. 499. Interestingly enough, the English courts overruled the impact rule only thirteen years after it was created. *Dulieu* v. *White & Sons* (1901), 2 K.B. 669, and some courts in this country began to abrogate it soon after. *Simone* v. *Rhode Island Co.* (1907), 28 R.I. 186, 66 A. 202.