Beverly Ellen KOSMACEK and Lloyd John Kosmacek, Plaintiffs–Appellees/Cross–Appellants,

v.

FARM SERVICE CO–OP OF PERSIA and Farm Service Co–Op of Harlan, Iowa, Defendants–Appellants/Cross–Appellees.

No. 90–1402.

Court of Appeals of Iowa.

Feb. 25, 1992.

Mark McCormick, Des Moines, and Robert Kohorst of Kohorst Law Firm, Harlan, for defendants-appellants.

John McHale and Dennis M. Gray of The Peters Law Firm, P.C., Council Bluffs, for plaintiffs-appellees.

Daniel B. Shuck of Eidsmoe, Heidman, Redmond, Fredregill, Patterson & Schatz, Des Moines, for amicus curiae Owens–Corning Fiberglas Corp.

Gregory G. Barntsen of Smith, Peterson, Beckman & Willson, Council Bluffs, and Joseph C. Wilkinson, Jr. of Lemle & Kelleher, New Orleans, La., for amicus curiae Monsanto Co.

Heard by DONIELSON, P.J., and SCHLEGEL and SACKETT, JJ.

SACKETT, Judge.

The defendants-appellants Farm Service Co-op of Persia and Farm Service Co-op of Harlan appeal a trial court decision awarding plaintiffs-appellees Beverly Kosmacek and Lloyd Kosmacek damages for defendants' negligence in mixing farm chemicals in the area of plaintiffs' property.

Plaintiffs contend they suffered damages when city fire hydrants adjacent to their property were used by the defendants and defendants' customers to mix water with farm chemicals, particularly herbicides. Plaintiffs claimed the chemical came on to their adjacent property as a result of defendants and their customers allowing herbicide tanks to overflow and leaving chemical containers in the area.

The trial court found the defendants negligent. The trial court determined as a

result of the negligence the plaintiffs suffered health problems, damages to real estate and vegetation, and emotional distress. The trial court awarded plaintiffs $28,580 for damage to real estate, $2,580 for damage to vegetation and trees, $2,564.75 for medical expenses, $45,000 for mental anguish, and $10,000 in punitive damages.

The defendants appeal contending (1) the trial court erroneously held it liable to the plaintiffs under a standard of care applicable only to business invitee, (2) the award of damages were erroneous in several ways, (3) the trial court relied on speculative evidence, and (4) punitive damages should not have been awarded. We affirm in part and reverse in part.

## I.

■ The trial court found the activities of the defendants and its customers were responsible for chemicals that allegedly made their way to the plaintiffs' property. In making the determination, the trial court relied on the law set forth in Restatement (Second) of Torts § 344 (1965) which provides:

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidentally negligent, or intentionally harmful acts of their persons or animals, and by the failure of the possessor to exercise reasonable care to:

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

The defendants argue this is an impermissible standard because the negligent actions did not occur on their property and this section only applies to a possessor of land when persons come on its land for business purposes. Defendants contend they were prejudiced when the trial court applied this law because of the affirmative duty it imposed to discover acts done or likely to be done or to give an adequate warning to others to avoid harm or to protect them in some manner. The trial court, in applying the section, held defendants responsible for their own actions and those of their customers.

The plaintiffs argue that the defendants knew of their customer use; consequently, the application of section 344 was proper. Plaintiffs further argue even if section 344 is not the correct law, that any error is harmless and does not merit a retrial. While we agree with defendants that section 344 was not the proper law to apply, we find any error as a result of its application caused no prejudice to defendants.

We determine under the facts of this case the trial court did not err in holding the defendants responsible for the conduct of both defendants and their customers in using the hydrants to mix chemicals and in leaving chemical containers in the area. Even though this conduct did not actually occur on real estate owned or leased by the defendants, there is substantial evidence the hydrants were regularly used by the defendants when they applied the chemicals and also frequently used by customers who purchased the chemicals and applied the chemicals themselves. The defendants were clearly aware of their customer use of the hydrants. Many of the chemicals defendants sold needed to be diluted with water prior to use. We find no error on this issue.

## II.

The defendants next challenge the measure of damages the trial court applied in determining damages to plaintiffs' real estate. The trial court found the plaintiffs, as a result of the defendants' negligence, suffered damage to their real estate in the amount of $28,580. The trial court found the plaintiffs' residence was not marketable as a homestead, and its best use at the time was as a farm field. The trial court then fixed damages at the difference between the property's appraised value as a homestead and as a farm field. The question is whether these findings are supported by substantial evidence. *See Wolfe v. Graether*, 389 N.W.2d 643, 651 (Iowa 1986). The defendants admit there is evi-

dence in the record to support a finding minimal levels of chemicals were in the soil on the plaintiffs' property and the water in a well north of their home had minimal chemical contamination. The defendants argue, however, there is not evidence the chemical levels were above recognized minimal standard levels or the levels were there permanently or that the levels of chemicals rendered the premises uninhabitable for all time. Defendants argue the plaintiffs continue to live on the premises, have not tried to sell it, and have no plans to move. The defendants contend the absence of a showing that the plaintiffs are permanently deprived from using the premises for residential purposes makes the trial court's determination that the property was in essence usable only as a farm field for all time erroneous. The plaintiffs argue the damages are justified.

■ Our review on this issue is difficult. The trial court's findings do not set forth the evidence the trial court relied on in finding the real estate not usable. Furthermore, plaintiffs' brief does not direct us to that part of the record containing evidence that supports their claim that the land eternally has no value except as farmland. It is not our responsibility to review the record to attempt to find supporting evidence. We have, however, tried to do so. Our task has been difficult because of the failure of the parties to include *only* those things relevant to the issues on appeal in the appendix. However, the only evidence we find is there was very minimal contamination by some chemicals. Not only is there no evidence that the contamination damaged the real estate, but there is considerable evidence it did not. The Iowa Department of Agriculture performed several tests of soil samples from areas the plaintiffs claimed were contaminated as well as mulberry leaves from a sapling on plaintiffs' property. There is no evidence the soil samples taken from either plaintiffs' land or the hydrant site contained sufficient herbicide to be dangerous to human health. There was evidence the Banuel found in plaintiffs' well water was of such a low level that the water could be used for baby formula. There was evi-

dence the level of 2–4D on a mulberry leaf was not a danger to human health and the leaves could be used for salad without human health risks.

One exhibit shows on October 8, 1987, Donald P. Morgan, M.D., Ph.D., Institute of Agricultural Medicine and Occupational Health, Department of Preventive Medicine and Environmental Health, College of Medicine, University of Iowa, wrote to plaintiffs' attorney in response to a letter:

I have read your letter of September 28, 1987 and the accompanying laboratory reports and pictures.

The chemicals found in the soil samples are herbicides having low toxic potential in humans. The highest soil concentration I see reported is 8.3 parts per million. This means 8.3 milligrams of herbicide per kilogram of soil. This is equivalent to only a few grains of table salt in 2.2 pounds of soil. I do not believe this represents a serious toxic hazard.

If the contamination problem has continued over several years, it is possible that the surface soil does not reflect the total burden of chemical applied. I should think a test of the well water would be more appropriate as a gauge of soil penetration and also a medium more likely to carry the chemicals into human beings than roadside soils.

None of these chemicals has been identified as a cause of birth defects in humans. Given the very small quantities found in the soil samples, I don't believe the soil contamination poses any risk to Mrs. Kosmacek's pregnancy. Analysis of the drinking water might provide additional reassurance.

I am not able to attribute the symptomatology of family members to the chemicals listed.

Because these chemicals are herbicides, it is not likely that mature garden produce will contain very much of them, because they kill most plant life at fairly low dosage.

Apart from the above considerations, it seems to me the Farm Coop could and

should find better ways to carry on its work without threatening the neighbors with contamination of their yards, gardens and water wells. There must be ways they can contain their wastes on their own property so that their operations will not be a continuing source of worry and irritation.

I hope this is helpful.

Whether this is an issue of substantial evidence to support the issue or a problem of the court selecting an erroneous measure of damages, we are not bound by the trial court's conclusions of law. *See Midwest Recovery Serv. v. Wolfe*, 463 N.W.2d 73, 74 (Iowa 1990). We have found no evidence that supports a finding that the real estate has been rendered permanently uninhabitable by virtue of any chemical saturation. We find no evidence the premises have been rendered uninhabitable by chemical contamination. The trial court erred in determining the only use for the property was as farmland. We reverse the award of $28,580 for damage to plaintiffs' real estate.

### III.

■ The defendants next challenge the damages the trial court awarded the plaintiffs for medical expenses and mental anguish. The plaintiffs claim they suffered a large number of health problems as a result of the chemical exposure. They claimed respiratory problems, urinary tract infections, teeth problems, gum infections, and balding. The trial court awarded $2,564.75 for medical bills. The defendants claim there is not substantial evidence connecting all these bills to chemical exposures. There was considerable evidence introduced that challenged the connection of any of these alleged problems to any chemical exposure, including medical evidence that the chemicals found in tests did not cause problems the plaintiffs claimed; that cigarette smoking done by plaintiffs would accelerate the number of the family's respiratory infections; that none of plaintiffs' complaints were caused by chemical exposure; that the herbicides involved were the most innocuous of pesticides; that

the symptoms plaintiffs claimed were commonly encountered by the general population; and plaintiffs did not experience the irritative effects generally expected from the inhalation of ammonia and some solvents and herbicides.

Mark Thoman, M.D., a board certified toxicologist was asked and answered:

Q. Okay. Doctor, based upon your investigation and review of the materials provided to you, the examinations performed, the history taken and test results, are you able to state an opinion, based upon a reasonable degree of medical and scientific certainty, as to whether or not the illnesses and symptoms described to you by the Kosmaceks, and which you've reviewed in the medical records, were caused by the exposure to these chemicals? A. Yes, I have an opinion.

Q. And what is that opinion? A. The illnesses that they have suffered subsequent to the exposures, plural, were caused by the chemicals or the toxic exposures.

While the lack of evidence of any substantial degree of toxic exposure might cause us to reject testimony, we are not the fact finder. The trial court was the fact finder. The opinion of Thoman supports the trial court's decision on this issue. We affirm the award of medical expenses.

■ The defendants complain the trial court incorrectly awarded punitive damages. The trial court awarded $10,000 in punitive damages. The trial court determined the plaintiffs were entitled to damages under section 668A.1. This section provides in part that the "fact finder, in order to award punitive damages, must from the evidence that the conduct ... from which the claim arose constituted willful and wanton disregard for the rights or safety of another." Conduct is willful and wanton when the actor has intentionally done an act of an unreasonable character in disregard of known or obvious risk that was so great as to make it highly probable that harm would follow. *Fell v. Kewanee Farm Equip. Co.*, 457 N.W.2d 911, 919 (Iowa 1990). There was evidence in the

record that the trial court chose to believe that this use was in disregard of plaintiffs' rights, that chemical containers were left strewn around, and that the defendants acted in total disregard of the plaintiffs' interests. We affirm the award of punitive damages.

The trial court also awarded the plaintiffs $45,000 for mental anguish and pain and suffering to the time of trial. The question is whether, on this record, the trial court was justified in awarding plaintiffs mental anguish for their claimed fear of an enhanced risk of developing cancer or a serious illness in the future because of their alleged exposure to herbicides. Iowa has not yet addressed the issue of whether fear of a future illness is sufficient to support damages for mental anguish. The defendants argue there is not sufficient evidence in this case to support such an award, because there is no proof that the plaintiffs' fear is reasonable or based on sufficient evidence the feared illness or disease is likely to occur as a result of exposure to the chemicals or is related to a serious present physical injury.

■ Iowa recognizes where there is uncertainty or speculation whether damages have been suffered recovery should be denied. *Patterson v. Patterson,* 189 N.W.2d 601, 605 (Iowa 1971); *Orkin Exterminating Co. v. Burnett,* 160 N.W.2d 427, 430 (Iowa 1968). Iowa has, however, permitted recovery where the damages arise as a result of serious physical injury or debilitation. *See e.g. Holmquist v. Volkswagen of America, Inc.,* 261 N.W.2d 516, 526 (Iowa App.1977).

■ Not all unpleasant mental reactions provide a basis for recovery. Only a severe reaction is compensable. *See Poulsen v. Russell,* 300 N.W.2d 289, 297 (Iowa 1981). A plaintiff must present substantial evidence of severe emotional distress. *Id.* The emotional distress must be so severe that a reasonable man or woman could not be expected to endure it. *See Nesler v. Fisher and Co., Inc.,* 452 N.W.2d 191, 199–200 (Iowa 1990); *Bethards v. Shivvers, Inc.,* 355 N.W.2d 39, 44 (Iowa 1984).

■ The defendants contend the plaintiffs failed to introduce substantial proof the plaintiffs' fear of future serious illness, including concern, is reasonable based on evidence the specific chemicals involved can cause these illnesses, and plaintiffs' present physical injuries are related to feared future harm. The district court concluded plaintiffs' fears of future illnesses are reasonable and prudent. The trial court cited no evidence linking any identified herbicide with cancer, immune system dysfunction or a particular future illness. The defendants argue at best the evidence shows a mere possibility.

Plaintiffs contend it is not necessary to present medical evidence before the claim can be established, it is only necessary to show the defendants' negligence. Plaintiffs view their claim as an element of damages, compensation for the risk of what they think stems from the defendants' negligence. The plaintiffs cite *Nesler,* 452 N.W.2d at 199, as support for their position. We do not find the language of *Nesler* instructive.

It is not enough for the plaintiffs to merely say they worried because they think what the defendants did may make them more susceptible to cancer. Rather, there must be reliable data available linking the particular herbicide the plaintiffs were exposed to to an increased future risk of development of cancer or other substantial disease.

Courts have not generally required proof or expert testimony concerning causation in toxic tort cases be supported by epidemiological studies establishing a cause-effect relationship. *Christophersen v. Allied–Signal Corp.,* 902 F.2d 362, 367 (5th Cir. 1990). *But see Brock v. Merrell Dow Pharmaceuticals, Inc.,* 874 F.2d 307, 313 (5th Cir.1989). And an expert's opinion need not be generally accepted in the scientific community before it supports submission of proximate cause. *See Osburn v. Anchor Laboratories, Inc.,* 825 F.2d 908, 915 (5th Cir.1987), *cert. denied,* 485 U.S. 1009, 108 S.Ct. 1476, 99 L.Ed.2d 705 (1988).

■ But mere possibility of future harm is not sufficient. *Laswell v. Brown,*

683 F.2d 261, 269 (8th Cir.1982), *cert. denied,* 459 U.S. 1210, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983). There has to be a threshold regarding the likelihood of development of the feared disease. *See LaVelle v. Owens–Corning Fiberglas Corp.,* 30 Ohio Misc.2d 11, 507 N.E.2d 476 (1987); *DeStories v. City of Phoenix,* 154 Ariz. 604, 744 P.2d 705 (App.1987). To compensate for the problem, there should be a showing that plaintiffs are aware they possess an increased statistical likelihood of developing cancer, and from this knowledge springs a reasonable apprehension which manifests itself in mental distress. *Lavelle,* 507 N.E.2d at 481. The plaintiffs' evidence does not meet this threshold.

We affirm the award for damage to vegetation. We affirm the judgment for medical expenses. We reverse the award for property damage. We affirm the award of punitive damages. We reverse the judgment for fear of future disease.

Costs on appeal are taxed one-half to plaintiffs and one-half to defendants.

AFFIRMED IN PART; REVERSED IN PART.