SLANE, Appellant,

v.

METAMATERIA PARTNERS, L.L.C. et al., Appellees.

[Cite as *Slane v. MetaMateria Partners, L.L.C.*, 176 Ohio App.3d 459, 2008-Ohio-2426.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 07AP–901.

Decided May 20, 2008.

Joseph S. Streb Co., L.P.A., and Joseph S. Streb, for appellant.

Newhouse, Prophater & Letcher, L.L.C., and William H. Prophater Jr., for appellees MetaMateria Partners, L.L.C., Sequent, Inc., and Allied Employer Resources.

Brian J. Bradigan Law Offices, Brian J. Bradigan, and David W. Orlandini, for appellee NanoDynamics, Inc.

TYACK, Judge.

{¶ 1} After being diagnosed with cancer, plaintiff-appellant, John Slane, requested 90 days' leave from his employer to allow him to recover from surgery and radiation treatment. Slane's employer terminated him after 60 days, on the basis that company policy permitted a maximum of 60 days' leave. At issue is whether Slane was a qualified person with a disability within the meaning of Ohio's disability-discrimination statutes, R.C. Chapter 4112.

{¶ 2} Slane applied for employment through defendant-appellee, Sequent, Inc., on October 18, 2004. Sequent is a professional employer organization that contracted with defendant-appellee MetaMateria Partners, L.L.C., to provide

employees for its workforce. Slane was employed by Sequent for work at MetaMateria on October 24, 2004.

{¶ 3} At MetaMateria, Slane manufactured filters for fish tanks. He enjoyed the work, but was concerned about the high level of chemical dust in the facility and the lack of safety equipment. He requested that MetaMateria provide respirators for the employees. After a delay of several weeks, he finally received one, only to find out that the wrong filter had been ordered. Eventually, Slane got a working respirator, but he was dissatisfied with the lower quality filters that had been ordered. Slane brought other safety concerns to his manager, including dry sweeping of chemical dust. Instructions on the packaging of the various chemicals not only stated that a certain type of cleanup was to be used, but also warned of a risk of cancer from exposure to the materials.

{¶ 4} Slane was diagnosed with cancer of the right maxillary sinus on June 24, 2005. He requested a 90–day leave of absence to allow for surgery, recuperation, and radiation treatment. Sequent's company policy provided a maximum of 30 days' medical leave and 30 days' personal leave, for a total of 60 days' leave. A letter from Sequent to Slane dated July 22, 2005 stated that Slane would need to provide a written release statement from his health-care provider upon his return to work. On July 27, 2005, Slane completed a leave-of-absence form indicating that he began his leave on July 21, 2005, and expected to return to work October 21, 2005. The leave form was approved for a total of only 60 days' leave and specified that Slane had to provide a health-care provider's release upon his return. Under company policy, if Slane did not return to work by September 19, 2005 with a release from his physician, he would be considered to have resigned.

{¶ 5} The approval's notice stated as follows:

When a leave of absence ends, every reasonable effort will be made to return the employee to the same position, if it is available, or to a similar available position for which the employee is qualified. However, the Company cannot guarantee reinstatement in all cases. If an employee fails to report to work promptly at the expiration of the approved leave period, the Company will assume the employee has resigned from his/her position.

{¶ 6} Slane underwent surgery on July 29, 2005 to remove a cancerous mass. The surgery was successful, but the doctors had to remove a large portion of Slane's jaw. After a period of recuperation, Slane was fitted with a prosthetic jaw and began a course of radiation therapy. Since the MetaMateria facility was near the hospital where he received his treatments, Slane stopped by his workplace approximately once a week. During those visits, he was treated with courtesy and was not informed of any problem with his continued leave past the 60–day mark.

{¶ 7} In mid-October 2005, Slane informed his supervisor, Michael Gagel, that he was ready to return to work. Gagel told Slane that he would have to see if there was enough production for Slane to come back. Slane called again about two days later and, at that time, Gagel said that someone from Sequent would be getting in touch.

{¶ 8} The next day, Slane tried to fill a prescription and was told at the pharmacy that he had no insurance. Slane called Gagel again, and Gagel told him he was checking on it. This went on for about a week, and the next time Slane stopped in after radiation, Gagel informed him that he did not have a job.

{¶ 9} Two days later, Slane received a letter from Sequent informing him that he had been terminated in September 2005. The company considered Slane to have resigned because he did not provide a return-to-work slip when his 60 days of leave expired.

{¶ 10} Slane filed suit against MetaMateria, Sequent, Inc., Allied Employer Resources, Inc., and NanoDynamics, Inc. Allied Employer Resources is the former corporate name of Sequent, Inc. NanoDynamics is the sole shareholder of MetaMateria. In his amended complaint, Slane brought three claims: (1) disability discrimination under R.C. Chapter 4112, (2) wrongful discharge in violation of public policy, and (3) intentional or negligent infliction of emotional distress due to cancerphobia. The trial court granted summary judgment in favor of MetaMateria and Sequent on all claims. Additionally, the trial court rendered moot NanoDynamic's motion for summary judgment and Slane's pending motions to compel.

{¶ 11} On appeal, Slane asserts the following assignments of error:

I. The trial court erred in granting appellees, MetaMateria & Sequent's [sic], motions for summary judgment.

II. The trial court erred in impliedly ruling that there is no longer a cause of action for disability discrimination in Ohio, i.e., the trial court erred in expressly holding that appellant was not disabled and not disabled because he was able to work.

III. The trial court erred in ruling that appellees had no duty to reasonably accommodate appellant and/or appellees properly complied with any such duty.

IV. The trial court erred in ruling that appellant's O.R.C. Chapter 4112 disability discrimination cause of action pre-empts appellant's public policy tort claim which claim is based upon failure to supply safety equipment.

V. The trial court erred in ruling that appellant had no legally cognizable claim for cancerphobia.

VI.    The trial court erred in overruling appellant's motions to compel discovery from appellee, Nanodynamics.

For ease of discussion, we elect first to focus on appellant's disability claim.

■ {¶ 12} The Ohio Civil Rights Act prohibits discrimination in employment on the basis of disability.   R.C. 4112.02(A).   In order to establish a prima facie case for his disability-discrimination claim, Slane had the burden to demonstrate that (1) he is disabled, (2) he is otherwise qualified for the job, with or without a reasonable accommodation, (3) he suffered an adverse employment decision, and (4) the employer knew or had reason to know of the disability at the time of the employment decision.   See *Myers v. McGrath,* Franklin App. No. 06AP–616, 2007-Ohio-3228, 2007 WL 1821706.   Our analysis must focus on the first element—whether Slane is disabled within the meaning of R.C. Chapter 4112.

{¶ 13} Slane contends that the trial court erroneously held that a person who is disabled but still able to work with or without accommodation is not a qualified disabled person and cannot recover.   But this contention is immaterial to our analysis.   Our standard of review on summary judgment is de novo and, therefore, we stand in the shoes of the trial court and conduct an independent review of the record.   *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265.

{¶ 14} The law governing motions for summary judgment is clearly set forth in the three-prong test of Civ.R. 56.   The party moving for summary judgment must demonstrate that (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, when the evidence is construed in a light most favorable to the nonmoving party.   If the moving party satisfies this initial burden, the nonmoving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial.

■ {¶ 15} Here, the primary issue on appeal is this: has Slane set forth sufficient facts showing there is a genuine issue of material fact that he was a disabled person within the meaning of R.C. 4112.01(A)(13) when he was terminated?   Under the disability-discrimination statutes, R.C. 4112.01(A)(13) defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working;  a record of a physical or mental impairment;  or being regarded as having a physical or mental impairment."

■ {¶ 16} In interpreting Ohio law on this subject, courts look to federal regulations and case law that interpret the Americans with Disabilities Act

("ADA"), Section 12101 at seq., Title 42, U.S.Code. *Hart v. Columbus Dispatch/Dispatch Printing Co.,* Franklin App. No. 02AP–506, 2002-Ohio-6963, 2002 WL 31819705, at ¶ 24. Federal regulations state that the term "substantially limits" means inability to perform or a severe restriction on the ability to perform, as compared to the average person in the general population. Section 1630.2(i), Title 29, C.F.R. In considering whether a person is substantially limited in a major life activity, the court should consider the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long-term impact, or the expected permanent or long-term impact, of or resulting from the impairment. Id.

{¶ 17} Cancer may be a disability as that term is defined in R.C. 4112.01(A)(13). *Hood v. Diamond Products, Inc.* (1996), 74 Ohio St.3d 298, 658 N.E.2d 738, paragraph two of the syllabus. See R.C. 4112.01(A)(16)(a)(iii). In *Hood,* the Supreme Court of Ohio was asked to determine whether a plaintiff diagnosed with bladder cancer had put forth sufficient operative facts to demonstrate that she was "handicapped" within the meaning of former R.C. 4112.01(A)(13). The court rejected a per se finding that cancer constitutes a handicap and stated that the determination of whether cancer is a handicap should be made on a case-by-case basis. The court recognized that there may be instances in which cancer is not pernicious enough in its effects to warrant a finding that the person who has cancer is handicapped. Id. at 303, 658 N.E.2d 738.

{¶ 18} Without a doubt, Slane's cancer of the right maxillary sinus was a severe disease or condition that necessitated surgery, removal of much of his right jaw, and radiation treatment. His cancer surgery left him with an "impairment" as defined in R.C. 4112.01(A)(16)(a)(i), because he had a "physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs, respiratory; including speech organs."

{¶ 19} In terms of the duration of his physical impairments, Slane needed approximately 90 days to recuperate from treatment. The surgery left him with some difficulty in pronouncing an "s" sound as well as difficulty producing saliva. After recuperating from his treatment, Slane testified that he was able to return to work with only minor limitations. The only permanent limitations were difficulty with the "s" sound, the need to clean his nose more frequently, and a dry mouth necessitating the need to drink water on a regular basis. Clearly, Slane presented evidence that he has a physical impairment as that term is used in the statute.

{¶ 20} Merely having a physical impairment does not make one disabled for purposes of Ohio's disability-discrimination statutes. Slane also needed to dem-

onstrate that his physical impairment substantially limits a major life activity. "Substantially limits," as used under the ADA, suggests limits that are "considerable" or that limit a person "to a large degree." *Toyota Motor Mfg., Ky., Inc. v. Williams* (2002), 534 U.S. 184, 196, 122 S.Ct. 681, 151 L.Ed.2d 615.

{¶ 21} In terms of major life activities, Slane testified that by October 2005, he could see, hear, think, climb, grasp, lift, sit, rise, walk, eat, breathe, swallow, brush his teeth, brush his hair, and sleep without difficulty. Slane's own testimony belies his claim that his cancer substantially limits his ability to perform the major life activities of speaking, breathing, eating, drinking, or swallowing as he had alleged.

{¶ 22} Other courts that have looked at this issue have concluded that cancer survivors who do not suffer from any substantially limiting impairment of a significant duration were not disabled. For example, in *Schwertfager v. Boynton Beach* (S.D.Fla.1999), 42 F.Supp.2d 1347, the court found that although breast cancer and reconstructive surgery involved anatomical loss and affected lymphatic, skin, and endocrine systems, there was no evidence that the employee was limited at work or in her daily activities. Therefore, she was not considered to be suffering from any substantially limiting impairment of a significant duration.

{¶ 23} Similarly, in *Combe v. La Madeline, Inc.* (Feb. 20, 2002), E.D.La. No. CIV. A. 00–3728, 2002 WL 253352, the court held that an employee who took four months off work to have jaw surgery that limited his ability to eat was not disabled under the ADA.

{¶ 24} In this case, Slane failed to produce evidence that his impairment rose to the level of a disability. Therefore, we conclude that Slane has failed to create a genuine issue of material fact on the issue of whether he is disabled. The second assignment of error is overruled. Having concluded that Slane is not disabled for purposes of R.C. Chapter 4112, the third assignment of error is also overruled because Sequent had no duty to reasonably accommodate Slane under Ohio's disability-discrimination statutes.

{¶ 25} In his fourth assignment of error, Slane argues that his wrongful-discharge claim should survive because it is based on his complaints about safety equipment and not solely on his disability claim. Slane does not dispute that his common-law tort claim for wrongful discharge based on Ohio's public policy against disability discrimination must fail because of the recent Ohio Supreme Court case of *Leininger v. Pioneer Natl. Latex*, 115 Ohio St.3d 311, 2007-Ohio-4921, 875 N.E.2d 36. In *Leininger*, the court held that there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests. Id. at ¶ 26–27. Moreover, because Slane cannot establish a prima facie case of disability discrimi-

nation, his wrongful-discharge claim fails as well. *Thaman v. OhioHealth Corp.* (June 29, 2005), S.D.Ohio No. 2:03 CV 210, 2005 WL 1532550.

{¶ 26} Slane produced an affidavit in which he stated, "It is my belief and assertion that part of the reason I was fired from my job with the Defendants was my pestering Mr. Gagel about safety issues." This assertion is not evidence of the type contemplated by Civ.R. 56 that creates a genuine issue of material fact. Even assuming Slane has stated a claim for wrongful discharge, he has not produced a scintilla of evidence that his complaints about safety and request for a respirator motivated his discharge. Slane's assertion in his affidavit is no more than an allegation one might encounter in a complaint. He has produced no evidence that his termination was based in any way on his complaints about workplace safety. Therefore, the fourth assignment of error is not well taken and is overruled.

{¶ 27} In his fifth assignment of error, Slane argues that the trial court erred in ruling that he had no legally cognizable claim for "cancerphobia." Slane is claiming that his employer negligently or intentionally exposed him to known carcinogens, which caused him mental and emotional harm and distress. In order to recover for intentional infliction of emotional distress, Slane must show that defendants intentionally or recklessly caused him serious emotional distress by extreme and outrageous conduct. *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.* (1983), 6 Ohio St.3d 369, 374, 6 OBR 421, 453 N.E.2d 666.

{¶ 28} Cancerphobia has been described as a claimed present injury consisting of mental anxiety and distress over contracting cancer in the future. *Lavelle v. Owens–Corning Fiberglas Corp.* (1987), 30 Ohio Misc.2d 11, 14, 30 OBR 223, 507 N.E.2d 476. In *Lavelle,* the plaintiff was suffering from asbestosis, a known precursor to cancer, but he had not been diagnosed with cancer. The court held that an increased fear of cancer could be compensable if an asbestosis-afflicted patient is aware that he, in fact, possesses an increased statistical likelihood of developing cancer, and, from this knowledge, springs a reasonable apprehension which manifests itself as emotional distress. Id. at 15, 30 OBR 223, 507 N.E.2d 476. The plaintiff in *Lavelle* knew of a statistical likelihood that he could develop lung cancer from his exposure to asbestos. The court held that whether such a fear was reasonable was a fact issue for a jury, but a viable part of his asbestos-related damages was the right to recover for his reasonable fear.

{¶ 29} Here, Slane was exposed to certain chemicals in his work at MetaMateria. Specifically, he testified as to inhaling chemical dust. He presented copies of Materials Safety Data Sheets for the chemicals indicating that at least one of

the chemicals may cause lung cancer and that the lung cancer may take five to ten years to develop.

{¶ 30} Slane's psychologist testified that Slane suffered severe emotional distress. Slane also testified about his fear of contracting cancer in the future due to the workplace exposure. Slane's fear of contracting lung cancer appears inconsistent with his testimony that he desired to return to the same work environment. However, assuming as we must for purposes of reviewing summary judgment that Slane's fear is genuine, we still find a lack of admissible evidence that he faced a statistical likelihood that he would develop cancer in the future.

{¶ 31} Slane's treating physician, Dr. Richard Irene, testified at his deposition that he believed there was a probability that Slane's cancer was caused by exposure to workplace chemicals because "we know that metal particles are involved in the formation of carcinomas of the maxillary sinus." He then qualified his answer by saying "I'm not an expert in that field," and that "if [Slane] was going forward with those allegations, that experts in that field would have to come forth, do measurements, take samples, check with other employees, those sort of things, and see if there was that—that string." Dr. Irene was not able to testify to a reasonable degree of medical certainty that the work environment substantially contributed to Slane's development of cancer. Approximately one month later, Dr. Irene gave a trial deposition in which he was asked the following:

Q. Do you have an opinion [to a reasonable degree of medical certainty] as to whether Mr. Slane's exposure to workplace particulate matter containing silica flour, red iron oxide powder, $Fe_2O_3$, Christy Grog, Metakaolin clay, isopropyl alcohol 90 to a hundred percent, sodium silicate and aluminum silicate caused or contributed to his cancer?

* * *

[A.] Those are known carcinogens. They're known inflammatory agents. I think that they have a good chance of being related to the development of cancer for John.

{¶ 32} Dr. Irene's testimony fails to rise to the required degree of certainty that persons with sinus cancer will go on to develop cancer of the lung. Without weighing the evidence, we find that Dr. Irene's testimony is insufficient to create a genuine issue of material fact as to whether Slane has a known statistical likelihood of developing cancer from his exposure to workplace chemical dust, that Slane knows of this likelihood, and that from this knowledge springs a reasonable apprehension that manifests itself as emotional distress. Taken in the light most favorable to Slane, a "good chance" that exposure to workplace chemicals caused or contributed to his sinus cancer is not equivalent to saying

that Slane had a known statistical likelihood of developing lung cancer in the future due to his exposure to the chemicals.

{¶ 33} The fifth assignment of error is not well taken and is overruled.

{¶ 34} In his sixth assignment of error, Slane contends that should the case be remanded, he should be entitled to certain discovery that was the subject of four motions to compel. The trial court overruled those motions as moot due to its ruling on the motion for summary judgment. As we are affirming the judgment of the trial court, the sixth assignment of error is overruled.

{¶ 35} Finally, appellant's first assignment of error argues that the trial court erred in granting summary judgment for appellees. For all the reasons stated in connection with assignments of error two through five, this assignment of error is also overruled.

{¶ 36} Based on the foregoing, appellant's six assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

Judgment affirmed.

BROWN, J., and McGRATH, P.J., concur.