RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0235p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JOE B. ALLMAN,

        *Plaintiff-Appellant*,

*v.*

WALMART, INC.,

        *Defendant-Appellee*.

No. 19-4220

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:18-cv-00369—Sarah Daggett Morrison, District Judge.

Decided and Filed:  July 30, 2020

Before:  GILMAN, BUSH, and READLER, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Michael T. Conway, MICHAEL T. CONWAY AND COMPANY, Brunswick, Ohio, for Appellant.  Alison M. Day, Benjamin W. Mounts, LITTLER MENDELSON, P.C., Columbus, Ohio, for Appellee.

_____

## OPINION

_____

RONALD LEE GILMAN, Circuit Judge.  Joe B. Allman was employed as a commercial truck driver by Walmart, Inc.  After Allman's supervisors required him to wear a continuous positive airway pressure (CPAP) machine at night based on medical reports that Allman had sleep apnea, he resigned.  Allman has alleged that he was in fact constructively discharged from Walmart due to its requirement that he wear the CPAP machine.  He also claims that Walmart

retaliated against him by requiring him to wear the device, in violation of Ohio Revised Code Annotated § 4112.02(I), and that he was wrongfully terminated in violation of Ohio public policy.

The district court granted summary judgment in favor of Walmart with respect to Allman's retaliation claim and granted Walmart's motion to dismiss Allman's wrongful-termination claim. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.       BACKGROUND

### A.       Factual background

#### 1.       *Department of Transportation (DOT) regulations and Walmart's sleep-apnea program*

Walmart's requirement that Allman wear a CPAP machine is based on federal law. Federal regulations require commercial truck drivers to be "medically certified as physically qualified" to operate commercial motor vehicles. 49 C.F.R. § 391.41(a)(1)(i). A driver is not physically qualified if he or she has an "established medical history or clinical diagnosis of a respiratory dysfunction likely to interfere with his/her ability to control and drive a commercial motor vehicle safely." 49 C.F.R. § 391.41(b)(5). "Respiratory dysfunction" includes sleep apnea, which is listed under the "conditions that interfere with oxygen exchange and may result in incapacitation." 49 C.F.R. Pt. 391, App. A (E)(3).

Drivers must undergo an annual medical examination in order to be certified as "physically qualified." 49 C.F.R. § 391.41(a)(3). With exceptions not pertinent here, "the medical examination must be performed by a medical examiner listed on the National Registry of Certified Medical Examiners." 49 C.F.R. § 391.43(a).

Against this regulatory backdrop, Walmart promulgated a sleep-apnea program for its commercial truck drivers in 2013. Walmart contracted with a company called "SleepSafe Drivers" (SleepSafe) to oversee this initiative. Under the program, drivers are screened for sleep-apnea risk factors during their annual DOT medical examination and may be referred for

further evaluation and treatment on this basis. Walmart provides these benefits without cost to its drivers.

### 2. *Allman's employment with Walmart*

Allman began working as a driver for Walmart in 2006. During Allman's medical examination in 2013, physician assistant David Burton determined that Allman was at risk for sleep apnea and referred him for a sleep study. Allman asserts that the referral was based solely on his body-mass index and neck circumference. But Allman had noted several risk factors for sleep apnea in his intake form during the visit. He marked, for example, that he had diabetes and high blood pressure, and he checked the box indicating that he experienced "[s]leep disorders, pauses in breathing while asleep, daytime sleepiness, loud snoring."

Allman subsequently underwent a sleep study conducted by Advanced Home Medical, a SleepSafe contractor, and was diagnosed with sleep apnea. Pursuant to Walmart's sleep-apnea program, Allman was then instructed to wear a CPAP machine for four hours each night when sleeping in his truck. But Allman found that wearing the device caused him "trouble." Specifically, he experienced dry mouth from wearing the CPAP machine, as well as headaches and nosebleeds. He complained about the pain and discomfort caused by the device to his supervisor, John Coburn; to a Walmart manager, Jesse Judge; and to a SleepSafe employee, Sean Knight.

After several weeks of trying to use the CPAP machine, Allman's compliance wavered. Knight, who remotely monitored Allman's use of the device, informed Allman that he was not in compliance with Walmart's sleep-apnea program and warned Allman that he would not be allowed to drive unless he wore the CPAP machine. Allman was thereafter suspended twice for not complying with Walmart's requirement. Each time that Allman was suspended, he was required to wear the CPAP machine for five consecutive nights in order to return to his duties.

In February 2014, Allman independently sought out a second sleep study at Adena Hospital. The results of this sleep study, in contrast to the study by Advanced Home Medical, showed that Allman did not have sleep apnea. After receiving this negative result, Allman

stopped wearing the CPAP machine. He also informed his supervisor, Coburn, that he no longer needed to use the device.

In response, Walmart manager Judge instructed Allman to undergo another DOT medical examination in order to be recertified to drive. Allman returned to physician assistant Burton for the exam on March 5, 2014. When Allman showed Burton the results of the Adena Hospital sleep study, Burton issued Allman a new DOT certification card without conducting an independent examination.

Despite Allman's DOT recertification, Walmart Operations Safety Manager James Murphy instructed Allman to participate in a third sleep study. According to Allman, Murphy explained that the doctor who had performed Allman's sleep study at Adena Hospital was not board certified, and he requested that Allman undergo another sleep study arranged by SleepSafe. (Allman disputes Murphy's assertion that the doctor was not board certified, but he provided no evidence that the doctor was listed on the National Registry of Certified Medical Examiners.) Allman subsequently underwent a third sleep study at Mid Ohio Sleep Center on March 7, 2014, resulting in a second diagnosis of sleep apnea. A SleepSafe representative then instructed Allman to wear the CPAP machine for eight hours a night, seven days a week, and both Murphy and Knight informed Allman that he would need to wear the machine for three consecutive nights in order to return to work.

But Allman still refused to wear the CPAP machine. Coburn then requested that Allman take the conflicting sleep studies to a second DOT medical examiner, who would evaluate the reports. Allman was given seven days to do so. Rather than comply with the request, Allman instead resigned from his employment with Walmart.

**B.     Procedural background**

Allman filed suit against Walmart in the United States District Court for the Southern District of Ohio. His claims are all premised on alleged violations of Ohio state law, with jurisdiction based on diversity of citizenship. Allman asserted claims for (1) discrimination based on perceived or claimed disability, in violation of Ohio Revised Code Annotated §§ 4112.02(A) and 4112.99; (2) retaliation, in violation of Ohio Revised Code Annotated

§ 4112.02(I); and (3) wrongful termination, in violation of Ohio's public policy requiring safe workplaces. As the case progressed, Allman voluntarily dismissed his discrimination claim. The district court subsequently granted summary judgment in favor of Walmart on the retaliation claim, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and it dismissed the wrongful-termination claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.    ANALYSIS

### A.    Standard of review

We review the district court's grant of summary judgment de novo. *Keith v. County of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Likewise, "[w]e review de novo a dismissal under Federal Rule of Civil Procedure 12(b)(6)." *First Am. Title Co. v. Devaugh*, 480 F.3d 438, 443 (6th Cir. 2007). Rule 12(b)(6) provides that a complaint may be dismissed for "fail[ing] to state a claim upon which relief can be granted." We construe the complaint in the light most favorable to the plaintiff and determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### B.    Disability-retaliation claim

Allman contends that Walmart retaliated against him because of his complaints about having to wear the CPAP machine, in alleged violation of Ohio Revised Code Annotated § 4112.02(I). He argues that, although Walmart did not actually terminate him from his position, Walmart told him that he would be fired if he did not wear the device. Allman thus argues that the CPAP requirement resulted in his constructive discharge. He further contends that Walmart was not acting out of an interest to protect the public on highways when it imposed

the CPAP requirement, but rather to punish him for refusing to undergo an additional medical examination and for rejecting the accommodation of the CPAP machine.

Because retaliation claims under Ohio law are analyzed the same way as under federal law, *see Mengelkamp v. Lake Metro. Hous. Auth.*, 549 F. App'x 323, 329–30 (6th Cir. 2013), we may look to the analogous federal law in assessing Allman's claim. Under Ohio and federal law, a plaintiff asserting a retaliation claim must make a prima facie showing "that (1) [he] engaged in a statutorily protected activity, (2) [he] suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and the protected activity." *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007); *see also Johnson v. Univ. Hosps. Physician Servs.*, 617 F. App'x 487, 492 (6th Cir. 2015) (applying this framework to a claim under Ohio Revised Code Annotated § 4112.02(I)). "[T]he burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action" once the plaintiff has made out a prima facie case. *Bryson*, 498 F.3d at 570.

If the defendant offers a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to show that the reason was actually a pretext designed to mask unlawful discrimination. *Id.* A plaintiff may prove pretext "by establishing that the proffered reason: 1) has no basis in fact; 2) did not actually motivate the adverse action; or 3) was insufficient to motivate the adverse action." *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003).

After reviewing the record, we doubt that Allman has satisfied the elements to establish a prima facie case of disability retaliation. His claim of having engaged in a "statutorily protected activity" is particularly weak. But even assuming, without deciding, that Allman did establish a prima facie case, we conclude that Walmart has offered a legitimate, nondiscriminatory reason for its CPAP requirement and that Allman has failed to rebut this reason as pretextual. This court has explained that "[a]n employee is not protected when he violates legitimate rules and orders of his employer, disrupts the employment environment, or interferes with the attainment of his employer's goals." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir. 1989). And Walmart's program of requiring drivers who have sleep apnea to wear a CPAP machine constitutes a legitimate safety requirement and disability accommodation.

Our conclusion is supported by the record.  Walmart had before it two separate studies demonstrating that Allman had sleep apnea, and the company reasonably sought to ensure that Allman's twice-diagnosed medical condition was under control.  *See Butler v. Wash. Metro. Area Transit Auth.*, 275 F. Supp. 3d 70, 82 (D.D.C. 2017) (viewing an employer's requirement that an employee show that his sleep apnea was controlled by a CPAP machine as "an eminently reasonable balance between the individual interests of employees with disabilities and the safety standards required or necessitated by . . . regulation" (internal quotation marks omitted)).

Although Allman offers several arguments as to why Walmart's CPAP requirement was pretextual, his contentions are not persuasive.  First, Allman disputes the validity of the two sleep studies showing that he had sleep apnea by asserting that (1) he was awake during the duration of the first sleep study, and (2) the monitoring equipment had fallen off his body during the second sleep study, thereby waking him up.  But he offers no reason why Walmart should be required to believe Allman's account over that of the company's certified professionals.  *See Self v. Bnsf Ry. Co.*, No. A-14-CA-618-SS, 2016 WL 543245, at *15 (W.D. Tex. Feb. 9, 2016) (holding that an employer is "not required to rely upon [the plaintiff's] own opinion (or a physician's restatement of [the plaintiff's] opinion) that he no longer suffered from sleep apnea, and was permitted, for safety reasons, to verify whether the sleep apnea had remitted or not").

Second, Allman points to the sleep study from Adena Hospital as evidence that he does not have sleep apnea, thus making the CPAP requirement pretextual.  But Allman does not explain why Walmart should be compelled to accept evidence offered from Allman's chosen doctor over the two diagnoses made by SleepSafe, especially because he has offered no evidence that the doctor belonged to the National Registry of Certified Medical Examiners.  *See id.*  We find no basis to infer from this evidence that Walmart was motivated to require Allman to wear the CPAP machine "out of spite," as Allman suggests.

Third, Allman argues that his DOT recertification by physician assistant Burton in 2014 shows that Walmart's CPAP requirement was pretextual.  But Allman cites no case holding that an employee's DOT card carries such legal weight.  Indeed, cases from within this circuit suggest that employers may permissibly disregard DOT cards issued in error.  *See Cummings v. Dean Transp., Inc.*, 9 F. Supp. 3d 795, 804 (E.D. Mich. 2014) (holding that an employer was

permitted to remove an employee after it learned that a DOT card had been issued in error because "[p]lacing an uncertified person behind the wheel of one of its vehicles would have exposed [the employer] to both civil and criminal liability" (internal quotation marks omitted)); *Broadway v. United Parcel Serv., Inc.*, 499 F. Supp. 2d 992, 1001 (M.D. Tenn. 2007) (holding that an employer may "deny the plaintiff the package driver position on the basis that he does not meet the minimum requirements established by the DOT, although he has inexplicably obtained a card saying that he does").

Allman's first two sleep studies conflicted, and this alone would have provided a sufficient basis to question Allman's recertification. The results of Allman's third sleep study, which were obtained after Burton issued the DOT card, would have further suggested to Walmart that Allman's DOT certification might have been in error. And although Allman contends that Walmart was not permitted to require him to undergo the third sleep study, he provides no basis for this assertion. We believe, to the contrary, that Walmart reasonably required Allman to reconcile the conflicting results of the two previous studies.

Although Allman disagrees with Walmart's assessment of the information at its disposal at the time that it imposed the CPAP requirement, we conclude that "arguing about the accuracy of the employer's assessment is a distraction because the question is not whether the employer's reasons for a decision are *right* but whether the employer's description of its reasons is *honest*." *Hardesty v. Kroger Co.*, 758 F. App'x 490, 493 (6th Cir. 2019) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998)) (emphases in original). And because Walmart has shown "its reasonable reliance on the particularized facts that were before it at the time the decision was made," we find no basis to infer that its reason for requiring Allman to wear the CPAP machine was pretextual. *See id.* (quoting *Smith*, 155 F.3d at 807).

Walmart's offer to provide an additional DOT medical examination to Allman to resolve the dispute reinforces our conclusion. As the district court noted, the "sincerity of Walmart's belief [that Allman had sleep apnea] is . . . borne out by Walmart's instruction to Mr. Allman to take the conflicting medical reports to another doctor in an apparent effort to reconcile the conflicting medical evidence and settle the matter." We further note that Allman himself

believed that Walmart had required him to wear the CPAP machine because Walmart's management was "convinced that I had sleep apnea."

In sum, Allman has failed to rebut Walmart's legitimate reason for requiring him to wear the CPAP machine. His claim that Walmart retaliated against him based on his perceived disability therefore fails.

**C.      Wrongful-termination claim**

Allman also asserts that the district court improperly dismissed his claim for wrongful termination. Although Ohio has traditionally followed an employment-at-will doctrine, which allows employers to terminate workers "for any cause," *Painter v. Graley*, 639 N.E. 2d 51, 55 (Ohio 1994) (citation and internal quotation marks omitted), an exception to this rule exists where an employee has been discharged in violation of public policy, *Greeley v. Miami Valley Maint. Contractors, Inc.*, 551 N.E.2d 981, 986 (Ohio 1990), *narrowed in part by Tulloh v. Goodyear Atomic Corp.,* 584 N.E.2d 729 (Ohio 1992). As the Supreme Court of Ohio has explained, this exception derives from the need for "a proper balance" between "the employer's interest in operating a business efficiently and profitably, the employee's interest in earning a livelihood, and society's interest in seeing its public policies carried out." *Collins v. Rizkana*, 652 N.E.2d 653, 657 (Ohio 1995) (internal quotation marks omitted).

"The existence of such a public policy may be discerned by the Ohio judiciary based on sources such as the Constitutions of Ohio and the United States, legislation, administrative rules and regulations, and the common law." *Painter*, 639 N.E.2d at 56. Allman grounds his claim on *Kulch v. Structural Fibers, Inc.*, 677 N.E.2d 308 (Ohio 1997), where the court explained that "[t]he public policy of [Ohio] demands that employees be provided with a safe work environment and that unsafe working conditions be corrected." *Id.* at 322 (citing Ohio Revised Code Annotated § 4101.12, which provides for the "duty of employer to furnish safe place of employment"). Accordingly, "[r]etaliation against employees who file [Occupational Safety and Health Administration (OSHA)] complaints concerning unsafe or unhealthy conditions in the workplace is an absolute affront to Ohio's public policy favoring workplace safety." *Id.*

Although Allman does not allege that he filed an OSHA complaint, he claims to have opposed the "unsafe working condition" of the CPAP machine by refusing to wear the device.

This leads us to Allman's so-called *Greeley* claim, the elements of which are as follows:

1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).

2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).

3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).

4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

*Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003) (quoting *Collins,* 652 N.E.2d at 657–58) (emphases in original).

To start with, Allman has failed to satisfy the "jeopardy element" of *Greeley.* Under the three-step jeopardy analysis employed by this court, we must

(1) determine what kind of conduct is necessary to further the public policy at issue; (2) decide whether the employee's actual conduct fell within the scope of conduct protected by this policy; and (3) consider whether employees would be discouraged from engaging in similar future conduct by the threat of dismissal.

*Himmel*, 342 F.3d at 599 (citation and internal quotation marks omitted). The employee must also have given the employer clear notice "that he is invoking a governmental policy as the basis for his complaint, not just his own self-interest." *Jermer v. Siemens Energy & Automation, Inc.*, 395 F.3d 655, 659 (6th Cir. 2005).

Allman's claim fails to satisfy the jeopardy element's threshold three-step analysis, to say nothing of the notice requirement in *Jermer*. Although Allman claims that he opposed unsafe working conditions by refusing to wear the CPAP device, we are hard-pressed to understand the logic of his argument. Walmart's CPAP requirement was not an unsafe working condition, but instead a disability accommodation meant to *promote* public safety on the highways and to ensure compliance with federal law.

And to the extent that Allman claims to have been retaliated against for complaining about the device, we acknowledge that Allman need not have been "certain that the seemingly inappropriate conduct is actually illegal," but he must still have held a good-faith belief that his complaint was valid. *See Himmel*, 342 F.3d at 600. In this context, we believe that "good faith" required an objectively reasonable belief that the CPAP machine was an unsafe working condition. Nothing in the record before us would allow a reasonable person to hold such a belief. Allman's personal discomfort in wearing a CPAP machine that so many others have successfully used to alleviate the dangers of sleep apnea is indeed unfortunate, but his personal discomfort does not satisfy the jeopardy element of his *Greeley* claim.

Moreover, although the district court did not address the legitimate-business-justification element in response to Walmart's motion to dismiss because the element involves a question of fact, "this court may affirm the judgment of the district court on any grounds supported by the record, even if they are different from those relied upon by the district court." *Kennedy v. Superior Printing Co.*, 215 F.3d 650, 655 (6th Cir. 2000). And because the "overriding justification element[] of a public policy wrongful discharge claim involve[s] considerations of factors similar to those used in determining whether an employee was unlawfully discharged in a statutory retaliation claim," *Whitaker v. First Energy Nuclear Operating Co.*, 2013 WL 4792860, at *7 (Ohio Ct. App. Sept. 6, 2013), we may consider our retaliation-claim analysis in assessing Allman's *Greeley* claim, *see id.* at *8 (granting summary judgment in favor of the employer after concluding that the employee's *Greeley* claim failed to raise a genuine dispute of material fact). Walmart offered a legitimate reason for requiring Allman to undergo another DOT examination, and Allman failed to raise a genuine dispute as to whether that reason was pretextual. Allman's *Greeley* claim therefore fails on the same basis as his retaliation claim.

## III.    CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.