[Cite as *Jones v. Natural Essentials*, 2022-Ohio-1010.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| TERESA JONES, et al., | **CASE NO. 2021-P-0066** |
| Plaintiffs-Appellants, | |
| - v - | Civil Appeal from the Court of Common Pleas |
| NATURAL ESSENTIALS, INC., | |
| Defendant-Appellee. | Trial Court No. 2018 CV 00259 |

**O P I N I O N**

Decided: March 28, 2022
Judgment: Affirmed

*Natalie F. Grubb* and *Mark E. Owens*, Grubb & Associates, LPA, 437 West Lafayette Road, Suite 260-A, Medina, OH 44256 (For Plaintiffs-Appellants).

*Todd H. Lebowitz*, *Lisa M. Ghannoum*, and *Carrie Valdez*, Baker & Hostetler LLP, PNC Center, 1900 East Ninth Street, Suite 3200, Cleveland, OH 44114 (For Defendant-Appellee).

MATT LYNCH, J.

{¶1} Plaintiffs-appellants, Teresa Jones, Kevin Jones, and Rob Lovejoy, appeal the grant of summary judgment in favor of defendant-appellee, Natural Essentials, Inc. For the following reasons, we affirm the decision of the court below.

{¶2} On March 27, 2016, the plaintiffs filed a Complaint against Natural Essentials in the Portage County Court of Common Pleas. Count I raised a claim of Workers' Compensation Discrimination in violation of R.C. 4123.90 with respect to T. Jones. Count II raised a claim of Violation of the Ohio Civil Rights Act under R.C. 4112.01

*et seq.* with respect to all plaintiffs. Count III raised a claim of Violation of Ohio Public Policy with respect to all plaintiffs. Count IV raised a claim of Creation of Hostile Work Environment Based on Disability and Relationship to Person with Disability in violation of R.C. 4112.02(A) and 4112.99.

{¶3} On May 22, 2020, plaintiffs filed an Amended Complaint.

{¶4} On August 28, 2020, the Defendant's Answer was filed.

{¶5} On March 19, 2021, the plaintiffs filed a Motion for Summary Judgment as to Liability and Natural Essentials filed a Motion for Summary Judgment.

{¶6} On April 16, 2021, the plaintiffs filed their Response in Opposition to Defendant's Motion for Summary Judgment and Natural Essentials filed its Opposition to Plaintiffs' Motion for Summary Judgment.

{¶7} On April 23, 2021, the plaintiffs filed a Reply in Support of Plaintiffs' Motion for Summary Judgment as to Liability and Natural Essentials filed a Reply in Support of its Motion for Summary Judgment.

{¶8} On April 27, 2021, the plaintiffs filed an *Amended as to Page Limit* Reply in Support of Plaintiffs' Motion for Summary Judgment and Natural Essentials filed an *Amended as to Page Limit* Reply in Support of its Motion for Summary Judgment.

{¶9} The following relevant evidence was before the trial court:

{¶10} Natural Essentials is a manufacturer and distributor of specialty consumer products, such as hand sanitizer, located in Streetsboro, Ohio. Gary Pellegrino, Sr. is both the owner and president of the company. Teresa Jones, Kevin Jones (her son), and Robert Lovejoy (her boyfriend) were hired by Natural Essentials in August 2013 and terminated in September of the same year.

2

Case No. 2021-P-0066

{¶11} Teresa Jones started working at Natural Essentials on August 17, 2013, as a picker/packer, i.e., she filled orders by gathering and packaging products from the warehouse. She was hired to work weekends. T. Jones had another job as a glass inspector at VisiMax working Monday through Friday.

{¶12} The duration of T. Jones' employment at Natural Essentials comprised five weekends from her start date on August 17 (Saturday), until her termination date on September 16 (Monday). On the weekend of August 17-18, she worked Saturday and Sunday. On the weekend of August 24-25, she worked Saturday but not Sunday for reasons she could not recall. On the weekend of August 31-September 1, she worked a half of a day on Saturday and did not work Sunday because of a wedding. On the weekends of September 7-8 and September 14-15, she worked both Saturdays and Sundays.

{¶13} K. Jones' employment at Natural Essentials mirrored that of T. Jones' employment, except that he started work on the weekend of August 10-11.

{¶14} T. Jones testified that when she and K. Jones would be absent from work, she advised their supervisor, Faith Owens, in advance and obtained her approval for the missed work. According to Owens, she would acknowledge that the Joneses were missing work and notify the appropriate persons, but she did not approve the absences.

{¶15} On September 14 (Saturday), the Joneses requested the following weekend off to host a tattoo party. After their shifts had ended, Owens spoke with Pellegrino and advised that the Joneses would not be working the weekend of September 21-22. Pellegrino decided to terminate them for excessive absences. Pellegrino testified that the Joneses were still probationary employees and not entitled to time off. Moreover,

3

requests for time off were supposed to be in writing. Pellegrino testified that he wanted them terminated on Sunday and had them removed from the company payroll. As a shift supervisor, however, Owens did not have authority to terminate employees. Director of operations, Chad Dierckman, would execute the terminations but would not be at work until September 16 (Monday).

{¶16} The Joneses worked their usual shift on September 15 (Sunday). During a morning break, T. Jones was smoking outside when she tripped and fell trying to avoid a bee. She reported the incident to Owens and wrote out the following statement: "While outside bees were chasing me. I ran from being stung and fell on my back in parking lot. Witnesses. Betty, Lisa, Kevin". Among the witnesses, Betty Clap testified that, after the fall, T. Jones returned to work. Lisa Davis testified that T. Jones said she was "fine" and returned to work. Kelly Porter testified that T. Jones said "that hurts" and returned to work. K. Jones testified that his mother was in severe pain and that he had to help her to get up and complete tasks for the rest of the day. T. Jones claimed that she was in extreme pain as a result of the fall but completed her shift and did not ask for medical attention. Owens reported to Pellegrino that T. Jones had fallen but that it was "no big deal."

{¶17} On September 16 (Monday), Owens advised Dierckman that Pellegrino wanted the Joneses terminated. After T. Jones had finished working at VisiMax that day, Dierckman called her and told her that she and K. Jones were fired, that Natural Essentials was "cutting ties" with them according to T. Jones.

{¶18} On September 17 (Tuesday), T. Jones sought medical attention and initiated a workers' compensation claim.

4

{¶19} Robert Lovejoy began work at Natural Essentials on August 26, 2013. He worked Monday through Friday in the shipping department operating a tow motor.

{¶20} On September 16 (Monday), Lovejoy borrowed a fellow employee, Alice Worman's, cellphone to text T. Jones during his lunchbreak. Worman noticed the content of the messages and showed them to her supervisor, Karen Collins. Collins advised Worman to show the messages to Owens and the shipping and receiving manager, Mike Edwards. Worman described the content of the messages in a written statement as follows: "Theresa [sic] Jones was telling Robert Lovejoy about running from a bee on Sunday Sept. 15, 2013 and then falling. He (Robert Lovejoy) told Theresa that she should sue and that neither one of them would have to work anymore. Theresa said she should go to the doctor's and give the f---ing bill to the asshole. Theresa asked Rob to see if there are any cameras on the parking lot. He told her that [there] were and that [Pellegrino] Sr. is responsible for anything that happens on his property. He said she should go to the doctor's if she is so sore."

{¶21} Edwards decided to terminate Lovejoy after discussing the matter with Dierckman. According to Edwards, the reasons for terminating Lovejoy were "his job performance, his attitude and the fact that he was stealing company time" by "using another employee's cellphone while he was on the clock." More specifically, Lovejoy repeatedly stocked items in the wrong location, was not as proficient on a tow motor as he claimed to be, and sent a text message to T. Jones in which he urged her to sue the company and called him an "asshole." According to Dierckman, Pellegrino made the decision to terminate Lovejoy: "Gary, Sr. made the decision based on performance in the

5

past, text messaging during work hours. Actually, the final straw was the content [of the messages]."

{¶22} Lovejoy's termination was communicated to him on the morning of September 17 (Tuesday). He requested a meeting with Pellegrino regarding his termination. Pellegrino asked him if he sent the text message to T. Jones and if he did so during working hours. Lovejoy responded affirmatively and Pellegrino confirmed that that was the reason for his termination.

{¶23} On May 25, 2021, the trial court granted Natural Essentials' Motion for Summary Judgment.

{¶24} On June 24, 2021, the plaintiffs filed a Notice of Appeal. On appeal, they raise the following assignments of error:

{¶25} "[1.] The Trial Court Erred in Requiring Appellants to Prove Elements of Their Claims on Summary Judgment Contrary to Civ.R. 56(C)."

{¶26} "[2.] The Trial Court Erred in Finding That Appellee is Entitled to Summary Judgment as to Count I for Workers' Compensation Retaliation Pursuant to R.C. §4123.90."

{¶27} "[3.] The Trial Court Erred in Finding That Appellee is Entitled to Summary Judgment as to Count II for Disability Discrimination against Appellant Teresa Jones and Associational Disability Discrimination against Appellants Kevin Jones and Robert Lovejoy."

{¶28} "[4.] The Trial Court Erred in Finding Appellee is Entitled to Summary Judgment as to Count III for Violation of Ohio Public Policy."

6

**{¶29}** "[5.] The Trial Court Erred in Relying on Incompetent Deposition Testimony as to Legal Conclusions by Lay Witnesses."

**{¶30}** Summary judgment is appropriate when "there is no genuine issue as to any material fact and * * * the moving party is entitled to judgment as a matter of law," i.e., when "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." Civ.R. 56(C). An appellate court's "review of a summary-judgment ruling is de novo." *Fradette v. Gold*, 157 Ohio St.3d 13, 2019-Ohio-1959, 131 N.E.3d 12, ¶ 6.

**{¶31}** The fifth assignment of error will be addressed first as it challenges the evidence on which the merits of the summary judgment Motion was decided. The plaintiffs argue that, in the depositions relied upon by Natural Essentials, "Counsel for Appellee repeatedly asked Appellants questions of law and sought legal analysis from them, which is cited in Appellee's [Motion for Summary Judgment]." Appellants' Brief at 30; *Wheatley v. Marietta College*, 2016-Ohio-949, 48 N.E.3d 587, ¶ 83 (4th Dist.) ("[q]uestions of law are outside the realm of firsthand knowledge, and thus, a lay witness may not offer legal conclusions") (citation omitted). As examples of allegedly inappropriate questions calling for legal conclusions, the plaintiffs note the following: "Tell me all the reasons you believe Natural Essentials retaliated against you for filing a workers' compensation claim."; "Can you tell me all the ways that you believe Natural Essentials discriminated against you because of your alleged disability?"; and "Are you claiming that you were harassed by Natural Essentials?" Further, the plaintiffs claim that

7

Natural Essentials used the responses to these questions to support its Motion for Summary Judgment.

{¶32} We find no reversible error. The questions asked in deposition are equally capable of eliciting factual responses as well as legal conclusions. To the extent that deponents offered legal conclusions in their responses, we presume "the trial court did not consider any improper evidence in granting [the] motion for summary judgment." *DelleCurti v. Fetty*, 11th Dist. Trumbull No. 2017-T-0001, 2017-Ohio-7965, ¶ 18; *Stoll v. Gardner*, 182 Ohio App.3d 214, 2009-Ohio-1865, 912 N.E.2d 165, ¶ 24 (9th Dist.) ("[w]e will not presume that the trial court considered such improper evidence, * * * unless the trial court specifically indicated that it did so when entering judgment in the case"); *State ex rel. Gil-Llamas v. Hardin*, 164 Ohio St.3d 364, 2021-Ohio-1508, 172 N.E.3d 998, ¶ 12 ("the court is presumed to have considered only relevant, material, and competent evidence"). Notably, the plaintiffs do not claim that the trial court adopted the deponents' fact responses as legal conclusions but, rather, they accuse Natural Essentials of doing so in its Motion for Summary Judgment. Moreover, even if the court did rely on such responses in granting summary judgment, such error would not necessarily require reversal in light of this court's de novo review of the propriety of summary judgment. *Fabian v. May*, 11th Dist. Trumbull No. 2020-T-0071, 2021-Ohio-2882, ¶ 24.

{¶33} The plaintiffs also argue under this assignment of error that it was error for "the Trial Court to rely on any of the deposition citations of [Natural Essentials] for Appellants' depositions, as the Record shows that certified and complete deposition transcripts were **never filed with the Trial Court by Appellee**." Appellants' brief at 32. "[B]efore a deposition may be considered as 'legally acceptable evidence for summary

8

judgment purposes,' (1) the deposition must be filed with the court or otherwise authenticated, (2) the deponent must sign the deposition or waive signature, and (3) there must be a certification by the officer before whom the deposition is taken." *Wholesale Builders Supply, Inc. v. Green-Source Dev., L.L.C.*, 8th Dist. Cuyahoga No. 99711, 2013-Ohio-5129, ¶ 9. In the present case, Natural Essentials attached partial copies of the plaintiffs' depositions to its Motion for Summary Judgment. The depositions in question were taken during the pendency of a prior lawsuit involving the same parties and similar claims. *See Jones v. Natural Essentials, Inc.*, Portage C.P. No. 2014 CV 00215, voluntarily dismissed pursuant to Civil Rule 41(A)(1)(a) on January 20, 2015.[1]

{¶34} It is well established that, in the absence of a motion to strike or other objection, a trial court has discretion to consider materials in connection with a motion for summary judgment that do not conform to the requirements of Civil Rule 56. *Lewis Potts, Ltd. v. Zordich*, 11th Dist. Trumbull No. 2018-T-0028, 2018-Ohio-5341, ¶ 41 ("as no objection was made to the affidavit or attached document, the trial court was free to consider the improper summary judgment evidence"); *Millstone Condominiums Unit Owners Assn. v. 270 Main St.*, 11th Dist. Lake No. 2011-L-078, 2012-Ohio-2562, ¶ 62; *Bank of New York Mellon v. Fisher*, 8th Dist. Cuyahoga No. 108855, 2020-Ohio-4742, ¶ 19. Here, the plaintiffs neither moved to strike nor objected to the partial depositions. Accordingly, we find no error in the consideration of these documents in determining the merits of Natural Essentials' Motion for Summary Judgment.

---

1. The following depositions from Case No. 2014 CV 00 215 were filed in the present case: Pellegrino, Vol. II; Alice Worman; Michael Edwards; Karen Collins; and Faith Owens. Portions of the following depositions were proffered in support of Natural Essentials' Motion for Summary Judgment: Pellegrino, Vol. 1; Teresa Owens; Kevin Owens; Robert Lovejoy; Chad Dierckman; Lisa Davis; Kelly Porter; and Betty Clapp.

Case No. 2021-P-0066

{¶35} The fifth assignment of error is without merit.

{¶36} In the first assignment of error, the plaintiffs argue broadly that the trial court "erred by looking past the many genuine issues of material fact and even controlling legal authority and [by] requiring Appellants to prove elements of their claims on summary judgment contrary to Civ.R. 56(C)." Appellants' brief at 13. Apart from these claims the plaintiffs make no particular argument under this assignment of error and attempt to rectify the situation by citing parts of the factual record in their Reply Brief. Thus, the argument as here raised will be disregarded. Whether genuine issues of material fact existed to preclude summary judgment with respect to the plaintiffs' claims for retaliation, discrimination, and violation of public policy will be considered in the following assignments of error. App.R. 12(A)(2) ("[t]he court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based"); *Dressler v. Dressler*, 11th Dist. Portage No. 91-P-2312, 1992 WL 366998, *1.

{¶37} The first assignment of error is without merit.

{¶38} In the second assignment of error, the plaintiffs claim the trial court erred by granting summary judgment as to their claim for workers' compensation retaliation pursuant to R.C. 4123.90.

{¶39} "No employer shall discharge, demote, reassign or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer." R.C. 4123.90. "An employee presents a prima facie case for

10

Case No. 2021-P-0066

retaliatory discharge under R.C. 4123.90 when he or she demonstrates the following: (1) he or she was injured on the job; (2) a worker's compensation claim had been filed; and (3) he or she was discharged in contravention of R.C. 4123.90." (Citation omitted.) *Adovasio v. Girard Community Commt.*, 11th Dist. Trumbull No. 2008-T-0027, 2008-Ohio-5016, ¶ 18.

{¶40} As noted by Natural Essentials, T. Jones' statutory retaliation claim pursuant to R.C. 4123.90 is barred by the fact that she was terminated before she filed her workers' compensation claim. "The language of R.C. 4123.90 is clear and unambiguous that an employee must have either filed a claim or initiated or pursued proceedings for workers' compensation benefits prior to being discharged for his employer to be liable under statute." *Bryant v. Dayton Casket Co.*, 69 Ohio St.2d 367, 433 N.E.2d 142 (1982), syllabus. Of course, as noted by the plaintiffs, "Ohio recognizes a common-law tort claim for wrongful discharge in violation of public policy when an injured employee suffers retaliatory employment action after injury on the job but before the employee files a workers' compensation claim or institutes or pursues a workers' compensation proceeding." *Sutton v. Tomco Machining, Inc.*, 129 Ohio St.3d 153, 2011-Ohio-2723, 950 N.E.2d 938, paragraph two of the syllabus. The violation of public policy claims will be considered under the fourth assignment of error.

{¶41} The second assignment of error is without merit.

{¶42} In the third assignment of error, the plaintiffs argue the trial court erred by granting summary judgment with respect to their claims for disability discrimination.

{¶43} It is unlawful in Ohio for an employer to discriminate against an employee on account of the employee's disability (formerly known as handicap discrimination). R.C.

11

4112.02(A) ("[i]t shall be an unlawful discriminatory practice * * * [f]or any employer, because of * * * disability * * * to discharge without just cause * * * that person"). Because of the similarity between the federal Americans with Disabilities Act and Ohio disability discrimination law, Ohio courts "can look to regulations and cases interpreting the federal Act for guidance in [their] interpretation of Ohio law." *Columbus Civ. Serv. Comm. v. McGlone*, 82 Ohio St.3d 569, 573, 697 N.E.2d 204 (1998).

{¶44} "To establish a prima facie case of disability discrimination, the plaintiff must demonstrate (1) that she is disabled, (2) that an adverse employment action was taken by an employer, at least in part, because of the disability, and (3) that the plaintiff, though disabled, can safely and substantially perform the essential functions of the job in question." *Allen v. totes/Isotoner Corp.*, 123 Ohio St.3d 216, 2009-Ohio-4231, 915 N.E.2d 622, ¶ 47. "'Disability' means a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment." R.C. 4112.01(A)(13).

{¶45} Summary judgment was appropriately granted on the plaintiffs' disability discrimination claim because they failed to raise a genuine issue of material fact as to whether Natural Essentials terminated T. Jones, "at least in part, because of [her] disability" and/or whether Natural Essentials regarded her as having a physical impairment. Stated otherwise, there is no evidence that Natural Essentials knew or should have had reason to know that T. Jones was even injured much less substantially impaired as a result of the fall. *Cady v. Remington Arms Co.,* 665 Fed.Appx. 413, 417

12

(6th Cir.2016) (a claim of discrimination "'on the basis of disability' * * * requires that the employer knew or should have known that the employee was disabled"); *Drogell v. Westfield Group*, 9th Dist. Medina No. 11CA0011-M, 2013-Ohio-5262, ¶ 15 (citation omitted) ("[i]f the plaintiff seeks to establish his or her case indirectly, without direct proof of discrimination, the plaintiff may establish a *prima facie* case of discrimination by showing that * * * the employer knew or had reason to know of the plaintiff's disability").

{¶46} Here, the evidence is that T. Jones reported her fall to Owens but did not request medical attention or advise Owens that she was in severe pain; rather, she returned to work and completed her shift. She stated that, after completing her written statement, she expected "nothing" to happen: "I just filled out the incident report [i.e., the written statement] because * * * I had fallen * * * on the premises." It is also worth noting that, according to her own description of her responsibilities at Natural Essentials, T. Jones would have to lift boxes of between 20 and 40 pounds. Moreover, there is no evidence that T. Jones herself even realized that she might have suffered a debilitating injury as a result of the fall inasmuch as she worked a full day at her other job following the fall and did not seek medical attention until the second day after the fall. It has been justly held that "an employer cannot be said to have or have reason to know of an employee's disability where that employee returns to work without restriction or request for accommodation." (Citation omitted.) *Leeds v. Potter*, 249 Fed.Appx. 442, 449 (6th Cir.2007).

{¶47} The plaintiffs assert the following as evidence that Natural Essentials regarded T. Jones as disabled: "Ms. Jones **immediately reported the incident to Ms. Owens**," – "rubbing [her] back and [her] butt" – "wrote and gave a statement to Ms.

13

Owens, and completed her shift in pain. * * * Ms. Owens failed to provide or instruct Ms. Jones to complete an Incident / Accident Report form, as Ms. Owens was required to do and was reprimanded [for not doing]. The evidence establishes that Ms. Jones was far from 'fine' or 'okay' after her fall. Mr. Jones helped Ms. Jones into the car after their shifts ended so that he could drive them home and continued to assist her at home in bathing, changing compresses and household chores due to her pain and discomfort." Appellants' reply brief at 9-10. At most, this is evidence that T. Jones suffered injury and was in pain following the fall. The fact that she completed her shift "in pain" and required K. Jones' assistance in driving and at home does not imply knowledge on the part of Natural Essentials. It does not raise any inference that Owens or Pellegrino was aware of her condition. *Cady* at 417 (to establish that the employer knew or should have known that an employee was disabled "the employer must know enough information about the employee's condition to conclude he is disabled").

{¶48} The plaintiffs claim that Owens "untruthfully" minimized the severity of the fall when she reported the incident to Pellegrino in an effort to establish "cat's paw" or "subordinate basis" liability. The argument is unavailing in the absence of evidence that Owens was aware of T. Jones' condition after the fall.

{¶49} The third assignment of error is without merit.

{¶50} In the fourth assignment of error, the plaintiffs argue the trial court erred in granting summary judgment on the violation of Ohio public policy claims.

{¶51} In Ohio, "[t]he tort of wrongful termination in violation of public policy * * * is an exception to the employment-at-will doctrine." *House v Iacovelli*, 159 Ohio St.3d 466, 2020-Ohio-435, 152 N.E.3d 178, ¶ 11. To establish a claim based on the violation of

14

Case No. 2021-P-0066

public policy, the plaintiff must show: "1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element). 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element). 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element). 4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element)." (Citations omitted.) *Collins v. Rizkana*, 73 Ohio St.3d 65, 69-70, 652 N.E.2d 653 (1995).

{¶52} The plaintiffs claim that Natural Essentials' "termination of Ms. Jones on the basis of her disability resulting from the Fall, as well as its termination of Mr. Jones on the basis of his familiar relationship as Ms. Jones' son, and Mr. Lovejoy on the basis of his association with and expressed support for Ms. Jones, violate Ohio public policy embodied in the ADA and Ohio Revised Code section 4112, *et seq.*" Appellants' brief at 28.

{¶53} We agree with the trial court that the public policy claims based on R.C. Chapter 4112 fail to satisfy the jeopardy element. In *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 773 N.E.2d 526 (2002), the Ohio Supreme Court held that "there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests." *Id.* at 244. "In that situation, the public policy expressed in the statute would not be jeopardized by the absence of a common-law wrongful-discharge action in tort because an aggrieved employee has an alternate means of vindicating his or her statutory rights and thereby discouraging an employer from engaging in the unlawful conduct." *Id.*; *House* at ¶ 16.

15

Case No. 2021-P-0066

{¶54} In the context of disability discrimination, an employer who violates the law "is subject to a civil action for damages, injunctive relief, or any other appropriate relief." R.C. 4112.99[2]; *Rice v. CertainTeed Corp.*, 84 Ohio St.3d 417, 422, 704 N.E.2d 1217 (1999) (R.C. 4112.99 provides for punitive as well as compensatory damages).

{¶55} Many courts, both state and federal, "have recognized that the statutory remedies provided by Revised Code Chapter 4112 adequately protect society's interests and adequately compensate an aggrieved employee for a violation of Ohio's discrimination laws." *McMillen v. Fraley & Schilling, Inc.*, N.D. Ohio No. 1:05 CV 1699, 2006 WL 8447100, *2 (cases cited); *Bostick v. Portage Cty. Pub. Defender's Office*, N.D. Ohio No. 5:07CV2215, 2007 WL 2572180, *5 ("Ohio Courts of Appeal have held that Ohio's public policy against discrimination will not be jeopardized if a common law claim of wrongful discharge based on Ohio Rev.Code § 4112.02 is not permitted"). Often cited is *Leininger v. Pioneer Natl. Latex*, 115 Ohio St.3d 311, 2007-Ohio-4921, 875 N.E.2d 36, which held that "a common-law tort claim for wrongful discharge based on Ohio's public policy against age discrimination does not exist, because the remedies in R.C. Chapter 4112 provide complete relief for a statutory claim for age discrimination." *Id.* at ¶ 34. In reaching this conclusion, the court described R.C. 4112.99 as "hav[ing] broad language regarding the relief available" and "embracing the panoply of legally recognized pecuniary

---

2. We note that, as part of Sub. H.B. No. 352 (effective April 15, 2021), R.C. 4112.99 was amended to add the following language (in italics): "*(A)* Whoever violates this chapter is subject to a civil action for damages, injunctive relief, or any other appropriate relief. *Except as otherwise provided in division (B) of this section, a person may bring such a civil action in a court of competent jurisdiction. (B) A person is prohibited from bringing a civil action for employment discrimination under this section.*" According to the Section 3 of the bill: "It is the intent of the General Assembly that common law claims for wrongful discharge are not available for actions maintainable under Chapter 4112. of the Revised Code and that the procedures and remedies set forth in Chapter 4112. of the Revised Code are the sole and exclusive procedures and remedies available under state law for claims of unlawful discriminatory practice relating to employment that are governed by that chapter."

16

Case No. 2021-P-0066

relief" so as "to put the plaintiff in the same position as if the unlawful discriminatory practice had not occurred." *Id.* at ¶ 30.  Although *Leininger* addressed age discrimination, its holding has often been applied in the context of disability discrimination.  *Wakefield v. Children's Hosp.*, N.D. Ohio No. C2-06-1034, 2008 WL 3833798, *8, fn. 11 (cases cited); *Caplinger v. Uranium Disposition Servs., LLC*, S.D. Ohio No. 2:08-cv-548, 2009 WL 367407, *6 ("Ohio Rev.Code § 4112 adequately protect[s] the interests of society and the plaintiff in protecting against disability discrimination"); *Slane v. MetaMateria Partners, L.L.C.*, 176 Ohio App.3d 459, 2008-Ohio-2426, 892 N.E.2d 498, ¶ 25 (10th Dist.) (appellant conceding that his "common-law tort claim for wrongful discharge based on Ohio's public policy against disability discrimination must fail because of the recent Ohio Supreme Court case of *Leininger*").

{¶56} The plaintiffs raise no argument that statutory remedies are inadequate. Rather, they argue that *Wiles* is distinguishable because it involved a claim brought under the Family and Medical Leave Act rather than a claim of disability discrimination.  This argument was considered and rejected in *Barlowe v. AAAA Internatl. Driving School, Inc.*, 2d Dist. Montgomery No. 19794, 2003-Ohio-5748, which concluded that "there is no indication that the principles expressed [in *Wiles*] are limited to FMLA-based claims." *Id.* at ¶ 37.  We find the reasoning of *Barlowe* compelling, particularly in light of the subsequent application of the principles expressed in *Wiles* to an age discrimination claim under R.C. Chapter 4112.

{¶57} Alternatively, the plaintiffs' public policy claims fail because they failed to make a prima facie claim under R.C. Chapter 4112.  "Many appellate districts have * * * held that a wrongful-discharge claim based on a violation of R.C. 4112.02 must fail if the

17

plaintiff does not establish a violation of R.C. 4112.02." *Bicudo v. Lexford Properties, Inc.*, 157 Ohio App.3d 509, 2004-Ohio-3202, 812 N.E.2d 315, ¶ 93 (7th Dist.) (cases cited); *Fitch v. U.S. Foodservice Corp.*, 12th Dist. Butler No. CA2007-03-068, 2008-Ohio-282, ¶ 22 ("based on the evidence presented [in support of his statutory claims], Fitch has failed to raise any issue of material fact to prove his dismissal was motivated by conduct related to the public policy, the causation element; and therefore, his [public policy] argument is without merit").

{¶58} The plaintiffs further argue that Natural Essentials' "termination of Ms. Jones in retaliation for her pursuing a workers' compensation claim violates Ohio public policy embodied in R.C. §4123.90." Appellants' brief at 27.

{¶59} In *Sutton v. Tomco Machining, Inc.*, 129 Ohio St.3d 153, 2011-Ohio-2723, 950 N.E.2d 938, as noted above, the Ohio Supreme Court recognized that it was a violation of public policy to retaliatorily discharge an employee that has suffered an injury on the job in anticipation of the employee filing a workers' compensation claim. "To establish causation, a plaintiff who alleges wrongful discharge in violation of public policy as expressed in R.C. 4123.90 must prove that the adverse employment action was retaliatory, which requires proof of a nexus between the adverse employment action and the potential workers' compensation claim." *Id.* at paragraph three of the syllabus.

{¶60} In the present case, the plaintiffs have failed to establish the existence of a genuine issue of material fact with respect to causation. The undisputed testimony of Owens and Pellegrino is that the decision to terminate the Joneses was made on September 14 (Saturday), the day before T. Jones suffered her injury. According to the plaintiffs' own statement of the evidence:

18

Mr. Pellegrino claims that he decided with Ms. Owens on Saturday, September [14], 2013, that Appellee would terminate Ms. Jones' and Mr. Jones' employment on Sunday, September [15], 2013, the day of the Fall. However, he further claims it had to wait until Monday, September [16], 2013, because the General Manager, Mr. Dierckman, was out of town until then. Mr. Dierckman was in Columbus instead of at work due to an alleged emergency family issue. * * *

On Sunday, September 15, 2013, the day of the Fall, Ms. Jones and Mr. Jones were permitted to clock in and work their usual 8 hour shifts without any knowledge of Appellee's purported decision to terminate them. The company sent Ms. Jones and Mr. Jones non-payroll checks dated October 7, 2013, for the amount of $64.00 each, for the 8 hour shifts they worked on Sunday, September 15. * * *

Mr. Pellegrino admits he did not speak with Mr. Dierckman regarding any termination of Ms. Jones and Mr. Jones until Monday, September 16, 2013, the day _**after**_ the fall, and that Mr. Dierckman did not even prepare termination papers until that Monday. Also on September 16, 2013, Mr. Dierckman called Ms. Jones and told her that Appellee was "cutting ties" with her and her son. Ms. Jones then told Mr. Jones what Mr. Dierckman told her.

(Citations to the record omitted.) Appellants' brief at 8-9

{¶61} The fact that the testimony of Owens and Pellegrino is not directly disputed or contradicted does not necessarily required that it be accepted as true, if there are grounds from which it can be reasonably inferred that they are lying. To support such an inference, the plaintiffs argue that, although Natural Essentials claimed the Joneses were being terminated for excessive absenteeism, they had not received reprimands for missing work, and their absences (two and a half-missed days out of ten days for T. Jones and out of twelve days for K. Jones) were approved by Owens. Whether the Joneses' absences were approved is only tangentially related to whether their discharge was retaliatory. Whether or not approved, T. Jones had missed a quarter of her scheduled shifts in her first thirty-five days of employment and intended on taking the following

19

weekend off. The plaintiffs also claim that Dierckman testified that "it was the Fall that caused Mr. Pellegrino to ultimately make the decision to terminate Ms. Jones and Mr. Jones, not alleged absences." Plaintiffs' brief at 10. But this misconstrues the import of Dierkman's testimony. He stated: "She [Owens] brought it up during the discussion that she [T. Jones] needed more time * * *, and since it was more time off and she missed so many days, that Gary [Pellegrino] decided to terminate." Dierckman was then asked, "and then she [Owens] talked about [T. Jones] stumbling in the workplace?" He responded, "correct." Finally, the plaintiffs note that Pellegrino was aware that, if T. Jones filed a workers' compensation claim, his rates would increase.

{¶62} The points raised by the plaintiffs, even construed in their favor, do little to establish the required nexus between their termination and a potential workers' compensation claim. Assuming, arguendo, that Owens and Pellegrino were lying about when and why the decision was made to terminate the Joneses, their claim still fails. As discussed under the third assignment of error, Natural Essentials was not on notice that T. Jones had suffered a debilitating injury as a result of her fall. Rather, she returned to work and completed her shift without incident. Even if the decision to terminate was made after the fall, the evidence does not raise the possibility that it was made to retaliate against T. Jones in anticipation of a future workers' compensation claim. T. Jones had not yet decided to even visit a doctor and there is no evidence that Natural Essentials was informed of her injury.

{¶63} The only possible way in which Natural Essentials might have been put on notice about a potential workers' compensation claim was the text messages that Lovejoy sent to T. Jones advising her to sue Natural Essentials (which technically would not be a

20

workers' compensation claim).  These were sent during Lovejoy's lunch break on September 17 (Monday).  However, Pellegrino testified that he instructed Dierckman to terminate the Joneses that morning – before the text messages were sent and/or discovered in the afternoon.  Of course, it could be inferred that Pellegrino was lying about communicating the decision to Dierckman that morning, and that the decision to terminate the Joneses (as well as Lovejoy) was made after the text messages had been sent and it was known that T. Jones was sore and possibly required medical attention and possibly might seek workers' compensation and that Owens, Pellegrino, and Dierckman agreed to conceal the truth and alter the payroll to make it appear that the Joneses were removed from the system prior to working their Sunday shifts and that all this was effected between the discovery of Lovejoy's text messages and Dierckman's call to T. Jones later that afternoon.  It is possible to infer all this, but it is not reasonable to do so.  Accordingly, the plaintiffs have failed to raise a genuine issue of material fact as to causation necessary to support their public policy retaliation claims.  *Nance v. Lima Auto Mall, Inc.*, 3d Dist. Allen No. 1-19-54, 2020-Ohio-3419, ¶ 64 ("[w]hile Angelina was terminated in between her date of injury and the point at which she filed her workers' compensation claim, she has not pointed to facts in the record that would connect her employer's decision to terminate her and her decision to file a workers' compensation claim").

{¶64} The plaintiffs further assert that the "termination of Ms. Jones for her reporting of safety violation(s) and a workplace accident violates Ohio Public Policy embodied in Article II, Sections 34 and 35 of the Ohio Constitution, Ohio Revised Code sections 4101.11, 4101.12, 4121.13, 4121.17, OSHA, including but not limited to Section 5(a)(1) and (2) of the General Duty Clause, and its promulgated standards and

21

regulations." Plaintiffs' brief at 27-28. "Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted." *Pytlinski v. Brocar Prods., Inc.*, 94 Ohio St.3d 77, 760 N.E.2d 385 (2002), syllabus. The statutory and constitutional provisions identified by the plaintiffs are those cited in *Pytlinski* as "support[ing] workplace safety and form[ing] the basis for Ohio's public policy." *Id.* at 79, fn. 2. On them rests the holding "that retaliation against employees who file complaints regarding workplace safety clearly contravenes the public policy of Ohio." *Id.* at 79-80.

{¶65} The trial court rejected several of these claims on the basis that they failed to satisfy the clarity element of a public policy claim. "To satisfy the clarity element of a claim of wrongful discharge in violation of public policy, a terminated employee must articulate a clear public policy by citation of specific provisions in the federal or state constitution, federal or state statutes, administrative rules and regulations, or common law." *Dohme v. Eurand Am., Inc.*, 130 Ohio St.3d 168, 2011-Ohio-4609, 956 N.E.2d 825, syllabus. According to *Dohme*, "[t]he mere citation of the syllabus in *Pytlinski* is insufficient to meet the burden of articulating a clear public policy of workplace safety." *Id.* at ¶ 21.

{¶66} We agree that the plaintiffs' reliance on Article II, Sections 34 and 35 of the Ohio Constitution fails to articulate a clear public policy violated by their discharge. Section 34 provides that "[l]aws may be passed * * * providing for the comfort, health, safety and general welfare of all employes [sic]." Section 35 provides for the creation of the workers' compensation system: "For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned

22

in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom." The focus of both Sections is legislative activity rather than the application of particular safety or workers' compensation laws. Accordingly, they do not support the plaintiffs' claims.

{¶67} Revised Code 4101.11 provides that "[e]very employer * * * shall furnish a place of employment which shall be safe for the employees therein" and 4101.12 that "[n]o employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe." Authorities are split on whether these statutory provisions satisfy the clarity element of a public policy claim based on workplace safety. *Compare Romero v. Middletown*, 479 F.Supp.3d 660, 675 (S.D.Ohio 2020) ("[a]lthough these statutes are certainly directed at the broad topic of workplace safety, and adopt a general rule that work premises should be maintained in a safe manner, they do not appear to articulate any specific public policy of the type that would support a discharge in violation of public policy claim"), and *Whitaker v. FirstEnergy Nuclear Operating Co.*, 6th Dist. Ottawa No. OT-12-021, 2013-Ohio-3856, ¶ 25 (R.C. 4101.11 and 4101.12 "are very general and broad"), with *Blackburn v. Am. Dental Ctrs.*, 2014-Ohio-5329, 22 N.E.3d 1149, ¶ 29 (10th Dist.) (R.C. 4101.11 and 4101.12 support an "Ohio public policy against retaliation by employers against employees who report workplace conditions that jeopardize staff and dental patient safety"), and *Lightner v. CB&I Constructors, Inc.*, S.D. Ohio No. 14-CV-2087, 2016 WL 6693548, *10 ("*Pytlinksi* is still controlling, it is still good law") and *9, fn. 6 ("*Whitaker* was flat-out wrongly decided").

23

{¶68} The issue of whether R.C. 4101.11 and 4101.12 satisfy the clarity element of an Ohio public policy claim is not one we need decide. It has further been held that "a plaintiff who cites workplace safety as the public policy satisfying the clarity element … must have at least lodged complaints about workplace safety in order to satisfy the jeopardy element of the claim." (Citation omitted.) *Jermer v. Siemens Energy & Automation, Inc.*, 395 F.3d 655, 658 (6th Cir.2005); *Beckloff v. Amcor Rigid Plastics USA, LLC*, 2017-Ohio-4467, 93 N.E.3d 329, ¶ 42 (the same). Here, there is no evidence that T. Jones made any complaints to Natural Essentials regarding workplace safety apart from her written statement that she fell while being chased by bees. This statement falls far short of indicating "any underlying governmental policy with the degree of specificity and clarity necessary to give a reasonable employer notice of the policy basis of the complaint." *Jermer* at 660. Accordingly, the plaintiffs' claims under R.C. 4101.11 and 4101.12 fail. *Quillen-Smith v. U.S. Bank, N.A.*, S.D. Ohio No. 3:20-cv-364, 2021 WL 1192683, *3 (plaintiff's claim is properly dismissed where she "does not allege that she lodged any complaints about workplace safety or U.S. Bank's failure to protect its employees").

{¶69} Revised Code 4121.13(A) and 4121.17(A) provide, respectively, for the administrator of workers' compensation to determine which "means [and] methods of protection are best adapted to render the employees of every employment and place of employment * * * safe," and for an investigation by the bureau of workers' compensation "[u]pon petition by any person that any * * * place of employment is not safe or is injurious to the welfare of any employee." Like the constitutional provisions cited by the plaintiffs, these statutes fail to satisfy the clarity element of a public policy claim. They authorize

24

Case No. 2021-P-0066

the administrator and bureau of workers' compensation to undertake actions having no particular relevance to the situation of Natural Essentials.

{¶70} Lastly, the plaintiffs cite Section 5 of OSHA, also known as the General Duty Clause, as a source of public policy. This Section provides that each employer "shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees" and "shall comply with occupational safety and health standards." 29 U.S.C. 654(a)(1) and (2). We find the plaintiffs' reliance on this Section unavailing in that, as with R.C. 4101.11 and 4101.12, T. Jones never submitted an OSHA complaint or otherwise reported a violation of state or federal labor law. "[T]he public policy of [Ohio] * * * that employees be provided with a safe work environment and that unsafe working conditions be corrected" is violated by "[r]etaliation against employees who file [OSHA] complaints concerning unsafe or unhealthy conditions in the workplace [and] is an absolute affront to Ohio's public policy favoring workplace safety." *Allman v. Walmart, Inc.*, 967 F.3d 566, 573-574 (6th Cir.2020), citing *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 152-153, 677 N.E.2d 308 (1997); 29 U.S.C. 660(c) (prohibiting the discharge of an employee for filing an OSHA complaint); R.C. 4113.52(B) (prohibiting discriminatory or retaliatory action against an employee for reporting violations of state or federal law). Prior to her termination, T. Jones did not report a violation of OSHA or any other state or federal employment statute and, accordingly, cannot bring a public policy claim based on those statutes. *Doody v. Centerior Energy Corp.*, 137 Ohio App.3d 673, 675, 739 N.E.2d 851 (11th Dist.2000) ("reporting safety concerns to OSHA satisfied the clarity and jeopardy elements of the tort because federal law protects employees from being

25

discharged for filing complaints related to OSHA, which is consistent with Ohio's public policy in favor of workplace safety").

{¶71} The fourth assignment of error is without merit.

{¶72} For the foregoing reasons, the Judgment of the Portage County Court of Common Pleas is affirmed. Costs to be taxed against the appellants.


CYNTHIA WESTCOTT RICE, J., concurs,

THOMAS R. WRIGHT, P.J., concurs in judgment only.